LITTELL *v.* KNORR

1. TRESPASS—RETAINING WALL—LAND LEVEL—DAMAGES.

A property owner who changes the level of his land is liable for damage to an adjacent landowner's property caused by pressure from soil fill against a building or adjacent property and may also be liable for damages resulting from pounding, compacting soil and vibrations caused by construction operations.

2. EASEMENTS — PRESCRIPTION — ALLEYS — DEDICATION — COMMON-LAW DEDICATION.

Finding by trial court that a 16-foot strip of defendant's land adjoining plaintiffs' property was a public alley because of an implied common-law dedication was proper where the city, a party defendant, admitted that the strip was not on its tax rolls and that it maintained the strip, and witnesses testified that the city graded and removed snow from it, that the general public as well as abutting property owners used the property, and that for a time a sign on the strip had identified it as a court.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 1 Am Jur 2d, Adjoining Landowners §§ 73–76.
[2] 23 Am Jur 2d, Dedication §§ 3, 21, 56, 57.

Appeal from Oakland, Robert L. Templin, J. Submitted Division 2 June 10, 1970, at Lansing. (Docket No. 6,655.) Decided June 22, 1970. Leave to appeal denied February 19, 1971. 384 Mich 808.

Complaint by Harry B. Littell and Ruth H. Littell against George Knorr for trespass. Detroit Edison Company and the Village of Rochester were joined as party defendants. Judgment for plaintiffs. Defendant appeals. Affirmed.

*Bond, Dillon & Lang* (*Charles J. Porter,* of counsel), for plaintiffs.

*Schuur & Keating* for defendant Knorr.

Before: McGREGOR, P. J., and BRONSON and MAHINSKE,* JJ.

BRONSON, J. Plaintiffs and defendant Knorr are the respective owners of adjoining lots located in Rochester, Michigan. The gist of plaintiffs' complaint is that they had constructed upon their lot, in addition to a permanent building, a retention wall which ran along the north boundary of the plaintiffs' property and immediately adjacent to the defendant's property; that defendant had a building constructed and an asphalt parking lot installed upon his property; that in so building these structures the defendant, without making any provisions for the protection of plaintiffs' building, undertook to fill his property which resulted in elevating the level of defendant's property as well as depositing the filling material against the plaintiffs' wall; that by reason of the pressure so resulting as well as the vibrations

---

* Circuit judge, sitting on the Court of Appeals by assignment.

from large equipment utilized by the defendant in the construction of the building and parking lot, the plaintiffs' building has been damaged.

Defendant denies that he changed the relative elevation of the property in connection with the construction of his building, and that in fact, the relative elevation of the two parcels was substantially the same after the construction of his building as before plaintiffs began construction of their building. Defendant further alleges that the damages to the plaintiffs' building resulted from the construction of plaintiffs' building without sufficient precautions to stand the stress of the earth against it.

Both parties introduced evidence (by way of personal testimony and the use of expert witnesses) to support their respective contentions. Following a full trial on the merits, the trial court, sitting without a jury, found as follows:

"There is just absolutely no question in the court's mind that the defendant is responsible for the damage to the building by a combination of circumstances; the additional fill, plus the pounding and compacting of the soil at the time of the parking lot construction.

"Defendant maintains that the plaintiff in part was responsible for this, that this building wasn't properly constructed, and that he had removed the retaining wall that was there 40 years. It is claimed that this is the cause of damage, that plaintiff, in fact, put himself in this position. But the court just doesn't buy that claim. The court has to maintain the legal position that plaintiff is entitled on construction of his building to use and support of his property as it existed at that time. And the defendant, if he is going to change his property in any way, is responsible and has a legal duty for the lateral support of the adjoining property owners.

Therefore, the court does find that the defendant is liable for the damage to plaintiff's property."

The court then proceeded to award the plaintiffs a judgment of $6,000, an amount somewhat less than that which would be required completely to restore the plaintiffs' property to its original condition, because in the court's own wording, "the equities * * * [do not] require complete return to the pre-existing circumstances".

It is recognized law that a party has a legal duty to adjacent property owners; changing the level of one's property which causes damage by pressure from soil fill against a building or adjacent property results in liability. See *Abrey* v. *City of Detroit* (1901), 127 Mich 374. See, generally, 2 CJS, Adjoining Landowners, § 33, p 29; Anno: "Liability of adjoining landowner for using neighbor's wall to support fill", 10 ALR 1321.

The following quotation from *Miller* v. *McClelland* (Iowa, 1919), 173 NW 910, is particularly applicable to the instant case:

"Assuming that plaintiff's wall is wholly on her own premises—and we think it must be so treated for the purpose of this case—defendant had no right to use it as an artificial support for a fill made upon his own premises above the natural surface of his lot. That he did so use it is shown by the evidence of several witnesses.

"Defendant was doubtless entitled to build up a foundation for his proposed building to such height as pleased him, but in the absence of a party wall such foundation should be laid and built upon and supported by his own premises. If he in fact supported his foundation or fill above the natural surface by pressure against plaintiff's building, it was not a mere temporary or passing trespass, which a court of equity would decline to consider, but was

a permanent encroachment upon plaintiff's property, long acquiescence in which might perhaps give rise in time to a presumptive right in defendant constituting a permanent burden upon plaintiff's property."

Likewise, liability can result from pounding, compacting soil, vibrations, etc. See Anno: "Vibrations—Property Damage—Liability", 79 ALR2d 966; 2 CJS, Adjoining Landowners, § 45c, p 39. See, also, *Grzelka* v. *Chevrolet Motor Car Co.* (1938), 286 Mich 141.

Having thus determined that the trial court properly applied existing law, we now turn to the court's finding of fact. This Court gives considerable weight to the fact findings of the trial judge, sitting without a jury, because of his advantageous position which enables the judge to observe the testifying witnesses and their demeanor. This Court will not reverse the trial court's finding unless we determine it to be "clearly erroneous". GCR 1963, 517.1; *State Bank of Sandusky* v. *Boddy* (1969), 17 Mich App 466; *Tann* v. *Allied Van Lines, Inc.* (1966), 5 Mich App 309. A careful review of the record discloses sufficient evidence to support the trial court's determination.

One remaining issue merits consideration on this appeal. Under Count II of plaintiffs' complaint, plaintiffs sought a judgment establishing an easement and a right of prescription to use defendant's alley which adjoined the property. Plaintiffs further sought to enjoin defendant from blocking or interfering with plaintiffs' use of the alley. The defendant claimed record title to the alley and denied that plaintiffs were entitled to an easement or right of prescription to use defendant's land for driveway purposes.

The trial judge found, in effect, that an implied common-law dedication of the alley was made, and thus declared the parcel of land a public alley for the following reasons:

"As to Count II, there is just no question in the court's mind, as a result of the substantial testimony by five or six witnesses regarding the 16-foot strip of land on plaintiffs' exhibit 2, that at this time and place the land is presently a public alley. The court bases its decision upon the following: First, the admission by the village or city of Rochester that the land is not on the tax rolls and that it has maintained the strip in the past, also the testimony of various witnesses that the city had maintained it by snow removal and grading and that the land had been used not only by the abutting property owners but by the general public, at least to go to the A & P grocery store from a period of 1949 to 1962. The property was barricaded in 1962 by the defendant and, obviously, if nothing had been done for another eight years, it probably would be necessary for the court to declare at that time that it was not a public alley. The overall circumstances, also including a sign, I believe, calling it Albertson Court some years ago, indicate that, at least until 1962, the 16-foot strip of land was used not only by the abutting property owners but by the general public to a certain degree. There is no strong testimony as to great throngs of the public using the alley, but it is uncontradicted that the public did use the alley. The court will declare that the 16-foot strip of land in question is and shall be a public alley."

In *Bain* v. *Fry* (1958), 352 Mich 299, 305, the elements necessary for a common-law dedication were stated in the following manner:

"In order to have a common-law dedication there must be: (1) an intent by the owners of the property to offer it to the public for use; (2) there must

be acceptance of this offer by the public officials in maintenance of the alley, street or highway by the public officials; (3) there must be a use by the public generally."

With respect to determining the intention of the owners to offer the property to the public for use, the Michigan Supreme Court in *Hawkins* v. *Dillman* (1934), 268 Mich 483, 491, quoting from *Vance* v. *Village of Pewamo* (1910), 161 Mich 528, 535, stated:

" 'The facts and circumstances relied upon to prove the existence of an intent on the part of the dedicator must be of a positive and unequivocal character. Since, by a dedication, valuable rights in lands pass from the owner, no presumption of an intent to dedicate arises, *unless it is clearly and expressly shown by his acts and declarations, or by a line of conduct the only reasonable explanation of which is that a dedication was intended.'* " (Emphasis added.)

A careful review of the record supports the trial court's conclusion that the acts and conduct of the defendant, as well as previous owners of the property, could only reasonably be construed as an intention to make a dedication of the parcel of property in question. See, generally, *Chapman* v. *City of Sault Ste. Marie* (1906), 146 Mich 23.

For the foregoing reasons, the decision of the trial court should be, and is, affirmed.

All concurred.