O’Connell, J.
 

 Defendants appeal as of right from a jury verdict awarding damages in trespass for invasions of plaintiffs’ property by intrusions of dust, noise, and vibrations. The gravamen of this appeal presents the question whether Michigan recognizes a cause of action in trespass stemming from invasions of these intangible agents. No published decision of an appellate court of this state is directly on point. Because of the importance of this issue of first impression, we will expound on it in some detail. Fol
 
 *54
 
 lowing a recitation of facts, we will examine the origins of the doctrines of trespass to land and nuisance, observe recent developments of those doctrines in this and other jurisdictions, and then reaffirm for this state the traditional requirements for a cause of action in trespass.
 

 We conclude that the law of trespass in Michigan does not cover airborne particulate, noise, or vibrations and that a complaint alleging damages resulting from these irritants normally sounds instead in nuisance.
 
 [1]
 

 I. FACTS
 

 Plaintiffs brought suit seeking damages in both trespass and nuisance, complaining of dust, noise, and vibrations emanating from the Empire Mine, which is operated by defendant Cleveland-Cliffs Iron Company and its subsidiary, defendant Empire Iron Mining Partnership.
 

 The Empire Mine is one of the nation’s largest mines, producing eight million tons of iron ore annually. The mine operates twenty-four hours a day, year round. At the time this action was commenced, all but three plaintiffs lived near the mine, in the village of Palmer in Marquette County. Cleveland-Cliffs, which also operates the nearby Tilden Mine, employs approximately 2,200 persons, making it the area’s largest civilian employer.
 

 The Empire Mine was originally dug in the 1870s, then expanded in the 1960s. A second pit was added
 
 *55
 
 in 1987, and a third in 1990-91.
 
 [2]
 
 The mine engages in blasting operations approximately three times a week, year round, and the extraction and processing of the iron ore generates a great deal of airborne dust. Plaintiffs complain that the blasting sends tremors through their property and that defendants’ dust constantly accumulates inside and outside plaintiffs’ homes. Plaintiffs assert that these emanations aggravate their need to clean and repaint their homes, replace carpets and drapes, repair cracks in all masonry, replace windows, and tend to cause plumbing leaks and broken sewer pipes.
 

 According to the testimony, the dust from the mine is fine, gritty, oily, and difficult to clean. Some plaintiffs complained that they seldom opened their windows because of the dust, and virtually every plaintiff complained that the snow in Palmer tended to be gray or black. Evidence presented at trial indicates that the emissions from the mining operations have consistently remained within applicable air-quality standards and that the amount of particulate matter accumulating over Palmer each month amounts to less than the thickness of a sheet of paper, but that this amount is nonetheless four times greater than what normally settles onto surrounding communities.
 

 In addition to concerns about the dust, many plaintiffs testified that the noise and vibrations from the blasts caused them to suffer shock, nervousness, and
 
 *56
 
 sleeplessness. Finally, several plaintiffs asserted that these conditions diminished the value of their homes, in some cases to the point of rendering them unmarketable.
 

 At the close of proofs, the trial court instructed the jury concerning both trespass and nuisance. The jury found that three of the plaintiffs were not entitled to recover under either theory. Concerning the remaining fifty-two plaintiffs, however, the jury was unable to agree on a verdict regarding the nuisance claim, but returned a verdict in favor of these plaintiffs with regard to the trespass claim, awarding damages totaling $599,199. The court denied defendants’ posttrial motions for a new trial or judgment notwithstanding the verdict.
 

 The sole issue that defendants raise on appeal is the propriety of the trial court’s jury instruction concerning plaintiffs’ trespass claim:
 

 Every unauthorized intrusion onto the lands of another is a trespass upon those lands, and it gives rise to a right to recover damages for the trespass, if any damages were caused by the trespass. So a landowner who causes emissions, dust, vibration, noise from his property onto another [sic] property assumes the risk of trespass, if the dust, vibration, noise affects the neighbor’s property, or if he causes by his actions, damages or invasion of his neighbor’s land.
 

 So again, to repeat. A trespass is an unauthorized intrusion into the lands of another.
 

 Defendants did not object on the record that the trial court’s instruction improperly recognized a cause of action in trespass where the intrusion complained of consisted of airborne particulate, noise, or vibrations, nor did they initially frame their issue on
 
 *57
 
 appeal, that way. Nonetheless, in the interests of justice,
 
 [3]
 
 and because the issue concerns a question of law and all the facts necessary for its resolution have been presented,
 
 [4]
 
 we will examine the related doctrines of trespass and nuisance and will determine how they bear on the intrusions at issue in this case. See
 
 Frericks v Highland Twp,
 
 228 Mich App 575, 586; 579 NW2d 441 (1998) (“this Court may go beyond the issues raised on appeal and address issues that, in this Court’s opinion, justice requires be considered and resolved”).
 
 [5]
 

 H. TRESPASS AND NUISANCE
 

 The general concept of “property” comprises various rights—a “bundle of sticks,” as it is often called
 
 [6]
 
 —which is usually understood to include “[t]he exclusive right of possessing, enjoying, and disposing of a thing.” Black’s Law Dictionary (6th ed, 1990), p 1216. As this latter characterization suggests, the right to exclude others from one’s land and the right to quiet enjoyment of one’s land have customarily been regarded as separate sticks in the bundle. E.g.,
 
 Lucas v South Carolina Coastal Council,
 
 505 US
 
 *58
 
 1003, 1044; 112 S Ct 2886; 120 L Ed 2d 798 (1992) (Blackmun, J., dissenting) (addressing as separate “attributes of ownership” the rights of exclusion, alienation, and enjoyment);
 
 Biggs v Comm’r of Internal Revenue,
 
 632 F2d 1171, 1177 (CA 5, 1980) (“ ‘title to real property ... is nothing more than a bundle of potential causes of action: for trespass, to quiet title, for interference with quiet enjoyment, and so on,’ ” quoting
 
 Starker v United States,
 
 602 F2d 1341, 1355 [CA 9, 1979]); Livingston,
 
 Public Access to Virginia’s Tidelands: A Framework for Analysis of Implied Dedications and Public Prescriptive Rights,
 
 24 Wm & Mary L R 669, 698 (1983) (“The notion of fee simple ownership carries with it the idea that the owner may exclude all others from his property, shall have the quiet enjoyment of it, and shall be free from unrecorded conflicting interests in it.”), citing Cribbet, Principles of the Law of Property (2d ed, 1975), pp 263-332.
 
 [7]
 
 Thus, possessory rights to real property
 
 *59
 
 include as distinct interests the right to exclude and the right to enjoy, violations of which give rise to the distinct causes of action respectively of trespass and nuisance. Prosser & Keeton, Torts (5th ed), § 87, p 622.
 

 A. HISTORICAL OVERVIEW
 

 “At common law, trespass was a form of action brought to recover damages for any injury to one’s person or property or relationship with another.” Black’s Law, Dictionary (6th ed), p 1502. This broad usage of the term “trespass” then gave way to a narrower usage, referring to intrusions upon a person’s “tangible property, real or personal.” Prosser & Keeton,
 
 supra
 
 at § 13, p 67. Today, the general concept of “trespass” has been refined into several specific forms of trespass, see Black’s Law Dictionary (6th ed), pp 1502-1504, and related doctrines known by various names. Landowners seeking damages or equitable relief in response to violations of their possessory rights to land now generally proceed under the common-law derivatives of strict liability, negligence, nuisance, or trespass to land.
 
 [8]
 
 It is the latter two products of this evolution from the general concept of trespass that are at issue in the present case.
 

 “ ‘[Tjrespass is an invasion of the plaintiff’s interest in the exclusive possession of his land, while nuisance is an interference with his use and enjoyment of it.’ ”
 
 Hadfield v Oakland Co Drain Comm’r,
 
 430 Mich 139, 151; 422 NW2d 205 (1988) (Brickley, J.,
 
 *60
 
 joined by Riley, C.J., and Cavanagh, J.), quoting Prosser & Keeton,
 
 supra
 
 at § 87, p 622. Historically, “[e]very unauthorized intrusion upon the private premises of another is a trespass . . . .”
 
 Giddings v Rogalewski,
 
 192 Mich 319, 326; 158 NW 951 (1916). Because a trespass violated a landholder’s right to exclude others from the premises, the landholder could recover at least nominal damages even in the absence of proof of any other injury.
 
 Id.
 
 Recovery for nuisance, however, traditionally required proof of actual and substantial injury.
 
 [9]
 
 Further, the doctrine of nuisance customarily called for balancing the disturbance complained of against the social utility of its cause.
 
 [10]
 

 Traditionally, trespass required that the invasion of the land be direct or immediate and in the form of a physical, tangible object. See, e.g.,
 
 Williams v Oeder,
 
 103 Ohio App 3d 333, 338, n 2; 659 NE2d 379 (1995) (noting then abandoning those traditional requirements);
 
 Davis v Georgia-Pacific Corp,
 
 251 Or 239, 242; 445 P2d 481 (1968) (abandoning the traditional requirements);
 
 Norwood v Eastern Oregon Land Co,
 
 139 Or 25, 37; 5 P2d 1057 (1931), modified 7 P2d 996 (1932) (wrongful diversion of water onto another’s land does not constitute trespass to land). Under these principles, recovery in trespass for dust, smoke, noise, and vibrations was generally unavailable
 
 *61
 
 because they were not considered tangible or because they came to the land via some intervening force such as wind or water. Instead, claims concerning these irritants were generally pursued under a nuisance theory.
 

 B. RECENT TRENDS
 

 Plaintiffs urge this Court to hold that they axe entitled to xecovex in txespass fox invasions of theix pxemises by intangible things without xegaxd fox how these annoyances came to their land. Plaintiffs would have us follow the example of certain courts from other jurisdictions, which have eliminated the traditional requirements for trespass of a direct intrusion by a tangible object, directing the inquiry instead toward the nature of the interest harmed. These courts have permitted recovery in trespass for indirect, intangible invasions that nonetheless interfered with exclusive possessory interests in the land. See 75 Am Jur 2d, Trespass, § 33, p 33 and cases cited. See also
 
 Mercer v Rockwell Int’l Corp,
 
 24 F Supp 2d 735, 743 (WD Ky, 1998) (allowing an action in “negligent trespass” concerning intrusions of invisible polychlorinated biphenyls [pcbs] that actually harm the property);
 
 Williams, supra
 
 (airborne particulate matter from a sand and gravel processing facility, an asphalt plant, and a concrete plant constituted trespass);
 
 Martin v Reynolds Metals Co,
 
 221 Or 86; 342 P2d 790 (1959) (trespass may stem from fluoride compounds in the form of gases and particles). We agree with the characterization of cases of this sort found in Prosser & Keeton as being “in reality, examples of the tort of private nuisance or liability for harm resulting from negligence,” not proper trespass cases. Prosser & Keeton,
 
 supra
 
 at § 13, pp 71-72 (concerning “decisions finding
 
 *62
 
 a trespass constituted by the entry of invisible gases and microscopic particles, but only if harm results”). Accordingly, we decline plaintiffs’ invitation to strip the tort of trespass to land of its distinctive accouterments and commingle its identity with other causes of action.
 

 As stated above, the traditional view of trespass required a direct entry onto the land by a tangible object. However, recent trends have led to an erosion of these requirements. Some courts have eliminated the requirement of a direct entry onto the land. E.g.,
 
 Bradley v American Smelting & Refining Co,
 
 104 Wash 2d 677, 686; 709 P2d 782 (1985);
 
 Borland v Sanders Lead Co, Inc,
 
 369 So 2d 523, 527 (Ala, 1979);
 
 Martin, supra
 
 at 101 (observing the trend without deciding whether to join it), citing Prosser, Torts (2d ed), p 56; 1 Restatement, Torts, § 158, comment h. Some courts have likewise eliminated the requirement of a tangible object. E.g.,
 
 Bradley, supra
 
 at 686;
 
 Borland, supra
 
 at 529. See also
 
 Martin, supra
 
 at 100 (trespass to land may be accomplished by “a ray of light, by an atomic particle, or by a particulate of fluoride”). In some cases the direct-and-tangible inquiry has been supplanted by an inquiry into the force and energy of the intruding agent. E.g.,
 
 Bradley, supra
 
 at 687;
 
 Borland, supra
 
 at 527;
 
 Martin, supra
 
 at 93.
 

 The courts that have deviated from the traditional requirements of trespass, however, have consequently found troublesome the traditional principle that at least nominal damages are presumed in cases of trespass. Thus, under the so-called modem view of trespass, in order to avoid subjecting manufacturing plants to potential liability to every landowner on whose parcel some incidental residue of industrial
 
 *63
 
 activity might come to rest, these courts have grafted onto the law of trespass a requirement of actual and substantial damages.
 
 Bradley, supra
 
 at 692;
 
 Borland, supra
 
 at 529. See also
 
 Martin, supra
 
 at 96 (observing that “[t]here are adjudicated cases which have refused to find a trespass where the intrusion is clearly established but where the court has felt that the possessor’s interest should not be protected”). Logically following from a requirement of substantial damages is the weighing of those damages against the social utility of the activity causing them.
 
 Martin, supra
 
 at 97 (balancing “the intrusion . . . against the socially desirable conduct of the defendant”). See also
 
 Bradley, supra
 
 at 685 (“While the strict liability origins of trespass encourage courts to eschew a balancing test in name, there is authority for denying injunctive relief if defendant has exhausted his technological opportunities for control. . . . Acknowledging technological or economic justifications for trespassory invasions does away with the historically harsh treatment of conduct interfering with another’s possessory interests.”).
 
 [11]
 

 We do not welcome this redirection of trespass law toward nuisance law. The requirement that real and substantial damages be proved, and balanced against the usefulness of the offending activity, is appropriate where the issue is interference with one’s use or enjoyment of one’s land; applying it where a landowner has had to endure an unauthorized physical
 
 *64
 
 occupation of the landowner’s land, however, offends traditional principles of ownership. The law should not require a property owner to justify exercising the right to exclude. To countenance the erosion of presumed damages in cases of trespass is to endanger the right of exclusion itself.
 

 To summarize, the effects of recent trends in the law of trespass have included eliminating the requirements of a direct invasion by a tangible object, requiring proof of actual and substantial damages, and weighing the plaintiff’s damages against the social utility of the operation causing them. This so-called “modem view of trespass” appears, with all its nuances and add-ons, merely to replicate traditional nuisance doctrine as recognized in Michigan. Indeed, the trends recognized or advanced by
 
 Bradley, Borland, Martin,
 
 and their kindred spirits have conflated nuisance with trespass to the point of rendering it difficult to delineate the difference between the two theories of recovery.
 

 With all of these modem adjustments to traditional trespass law, it is little wonder that it has become difficult to differentiate between trespass and nuisance. These adjustments have caused some to observe that “ ‘the line between trespass and nuisance has become “wavering and uncertain,” ’ ”
 
 Bradley, supra
 
 at 684, quoting Rodgers, Environmental Law, § 2.13, p 154 (1977). See also
 
 Burke v Briggs,
 
 239 NJ Super 269, 272; 571 A2d 296 (1990) (the blurring of the distinction between the two causes of action “has often led to results that are difficult to explain”), citing Prosser & Keeton,
 
 supra
 
 at § 87, p 622. Indeed, “it is apparent that the law of trespass and the law of nuisance come very close to merging.”
 
 Martin, supra
 
 at 97. We pre
 
 *65
 
 fer to preserve the separate identities of trespass and nuisance.
 

 C.
 
 ADKINS
 
 V
 
 THOMAS SOLVENT CO
 

 As stated above, no Michigan appellate court has squarely confronted the question whether the law of trespass in this state covers intrusions of intangible things or intrusions that are effected by indirect means. However, plaintiffs argue that in
 
 Adkins v Thomas Solvent Co,
 
 440 Mich 293; 487 NW2d 715 (1992), the Michigan Supreme Court impliedly eliminated the requirements that a trespass involve intrusions that are both direct and tangible. We disagree.
 

 In
 
 Adkins,
 
 the plaintiffs sought damages in nuisance from the defendant chemical company, on the ground that public perceptions to the effect that the defendant’s activities were causing environmental contamination of the groundwater caused depreciation of their property values,
 
 id.
 
 at 300, even though the plaintiffs acknowledged that the defendant’s activities in fact did not harm their groundwater,
 
 id.
 
 at 318. Our Supreme Court ruled that summary disposition was proper because unfounded fears of contamination did not constitute a significant interference with plaintiffs’ use and enjoyment of their property and, thus, did not rise to the level of an actionable private nuisance claim.
 
 Id.
 
 at 318-319.
 

 In discussing the historical development of nuisance law, the Court observed that the doctrine of nuisance evolved from that of trespass,
 
 id.
 
 at 307-308, and recognized that traditionally in cases of trespass damage was presumed whereas in nuisance substantial damage had to be proved:
 

 
 *66
 
 “Any intentional and unprivileged entry on land is a trespass without a showing of damage, since those who own land have an exclusive right to its use; but an act that interferes with use but is not in itself a use is not actionable without damage. The substantial interference requirement is to satisfy the need for a showing that the land is reduced in value because of the defendant’s conduct.”
 
 [Id.
 
 at 304-305, quoting Prosser & Keeton,
 
 supra
 
 at § 87, p 623.]
 

 However, in footnote 23, the Court recognized the recent developments in other jurisdictions under which the requirement for nuisance of substantial damage had crept into trespass:
 

 The common-law development of trespass, like nuisance, is . . . illustrative of a need to limit recovery to a proper case. In
 
 Bradley [supra
 
 at] 690-691..., the court discussed the modem view of trespass, which allowed recovery for indirect invasions of property such as those caused by smoke or air particles. Airborne particles might also give rise to an action in nuisance. To avoid “sanctioning actions in trespass by every landowner within a hundred miles of a manufacturing plant,” the court interposed the actual and substantial damages requirement.
 
 Id.,
 
 p 692. The substantial interference doctrine achieves the same purpose in nuisance law.
 
 [Adkins, supra
 
 at 310, n 23.]
 

 Plaintiffs admit that
 
 Adkins
 
 was a nuisance case, but argue that by way of the language quoted immediately above our Supreme Court adopted the “modem view of trespass” allowing recovery for invasions of property such as those of which plaintiffs complain. However, we do not regard dicta from
 
 Adkins
 
 in which the Supreme Court referred to a sister-state trespass case to illustrate a point of law regarding nuisance as effecting a merger of the two doctrines' in this regard. We have in fact found no case in this state in which recovery in trespass was allowed
 
 *67
 
 merely for intrusions of particulate matter, noise, or vibrations, and we decline to inflect this state’s jurisprudence in that direction. Instead, we prefer to respect the traditional requirement of a direct invasion and agree with Prosser and Keeton,
 
 supra
 
 at § 13, p 72, that “[t]he historical requirement of an intrusion by a person or some tangible thing seems the sounder way to go about protecting the exclusive right to the use of property.”
 

 m. HOLDING
 

 Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession. Once such an intrusion is proved, the tort has been established, and the plaintiff is presumptively entitled to at least nominal damages. Where the possessor of land is menaced by noise, vibrations, or ambient dust, smoke, soot, or fumes, the possessory interest implicated is that of use and enjoyment, not exclusion, and the vehicle through which a plaintiff normally should seek a remedy is the doctrine of nuisance. To prevail in nuisance, a possessor of land must prove
 
 significant harm
 
 resulting from the defendant’s
 
 unreasonable interference
 
 with the use or enjoyment of the property.
 
 Cloverleaf Car Co v Phillips Petroleum Co,
 
 213 Mich App 186, 193; 540 NW2d 297 (1995), citing
 
 Adkins, supra
 
 at 304. Thus, in nuisance, the plaintiff must prove all damages, which may be awarded only to the extent that the defendant’s conduct was “unreasonable” according to a public-policy assessment of its overall value. In the present case, because the intrusions of which plaintiffs complained were intangible things,
 
 *68
 
 the trial court erred in allowing the jury to award damages in trespass. Instead, any award of damages would have had to proceed from plaintiffs’ alternative but (as yet) unsuccessful theory of nuisance.
 

 As discussed above, we acknowledge that numerous courts in other jurisdictions have permitted the erosion of the traditional elements of the tort of trespass to land, directing their inquiry instead toward whether the invasion complained of interferes with the exclusive possession of the land generally without regard to whether the intrusion is direct or indirect, tangible or intangible. We prefer to retain the traditional elements, however, because they serve as gatekeepers—safeguarding genuine claims of trespass and keeping the line between the torts of trespass and nuisance from fading into a “wavering and uncertain” ambiguity. Further, retaining the distinction between the two theories of recovery limits the possibilities for dual liability stemming, from the same conduct and results. See Reynolds,
 
 Distinguishing Trespass and Nuisance: A Journey Through a Shifting Borderland,
 
 44 Okla L R 227, 229 (1991).
 

 The trial court’s instruction regarding trespass, as set forth above, recognized a right to recover in trespass “if any damages were caused by the trespass” and that the agents potentially causing the damages included “emissions, dust, vibration, noise.” Thus the trial court seems to have mirrored (and indeed gone beyond) the so-called modem view of trespass according to which intangible irritants could constitute trespass. This instruction thus erroneously conflated trespass with nuisance and produced the anomalous result that the jury failed to reach agreement on the nuisance claim while awarding damages for intru
 
 *69
 
 sions of intangible things pursuant to the trespass claim.
 

 A. TANGIBLE
 

 Because noise or vibrations are clearly not tangible objects, we hold that they cannot give rise to an action in trespass in this state.
 
 [12]
 
 We further hold that dust must generally be considered intangible and thus not actionable in trespass.
 

 We realize, of course, that dust particles are tangible objects in a strict sense that they can be touched and are composed of physical elements. However, we agree with those authorities that have recognized, for practical purposes, that dust, along with other forms of airborne particulate, does not normally present itself as a significant physical intrusion. See anno:
 
 Recovery in trespass for injury to land caused by airborne
 
 pollutants, 2 ALR4th 1054, 1055 (“[traditionally, an invasion of the exclusive possession of land by intangible substances, such as an airborne pollutant, was usually held by the court not to constitute a trespass”);
 
 Williams, supra,
 
 103 Ohio App 3d 338, n 2 (observing that some courts have held that a “ ‘tangible invasion’ or ‘object’ ” must be “more substantial than dust, gas, or fumes”), citing
 
 Bradley, supra
 
 at 686.
 

 Dust particles do not normally occupy the land on which they settle in any meaningful sense; instead
 
 *70
 
 they simply become a part of the ambient circumstances of that space. If the quantity and character of the dust are such as to disturb the ambiance in ways that interfere substantially with the plaintiffs use and enjoyment of the land, then recovery in nuisance is possible.
 

 B. DIRECT
 

 “[S]ome courts have held that if an intervening force, such as wind or water, carries pollutants onto the plaintiffs land, then the entry is not ‘direct.’ ”
 
 Williams, supra
 
 at 338, n 2, citing
 
 Bradley, supra
 
 at 686. However, in order to avoid harsh results most courts have avoided an overly strict distinction between direct and indirect invasions, see Prosser
 
 &
 
 Keeton,
 
 supra
 
 at § 13, pp 68-69. Still, “[t]he differentiation between direct and indirect results may not be absolutely dead.”
 
 Id.
 
 at 71.
 
 [13]
 

 Plaintiffs cite
 
 Littell v Knorr,
 
 24 Mich App 446; 180 NW2d 337 (1970), for the proposition that the law of trespass in this state does not concern itself with whether the invading agent comes to the land by foot, vehicle, air, or other means. However,
 
 Littell
 
 in fact does not stand for that proposition. Although
 
 Littell
 
 states that “liability can result from pounding, compacting soil, vibrations, etc.,”
 
 id.
 
 at 450, that amorphous statement does not identify the pertinent theory or theories of recovery. We hold that the direct invasion requirement for an action in trespass to land is still alive in Michigan. The question then becomes,
 
 *71
 
 how strong must the connection between cause and effect be in order to satisfy this requirement?
 
 [14]
 

 We agree with the Restatement view that “[i]t is enough that an act is done with knowledge that it will to a substantial certainty result in the entry of the foreign matter.” 1 Restatement Torts, 2d, § 158, comment i, p 279. Thus, a “direct or immediate” invasion for purposes of trespass is one that is accomplished by any means that the offender knew or reasonably should have known would result in the physical invasion of the plaintiff’s land.
 
 [15]
 

 C. DAMAGES
 

 The question of presumed damages hardly seems at issue in this case. There can be little doubt that plaintiffs proved actual damages to the jury’s satisfaction, albeit, for reasons set forth above, damages arguably flowing from nuisance, not trespass. Nonetheless, because the jury instruction at issue did not recognize the principle of presumed damages, we take this
 
 *72
 
 opportunity to reiterate this final distinction between trespass and nuisance.
 

 The trial court told the jury that “trespass . . . gives rise to a right to recover damages for the trespass, if any damages were caused by the trespass.” This instruction would be appropriate for nuisance, or negligence, under which theories the plaintiff must prove all damages, but not for trespass. A jury instruction with respect to the latter should announce that because the violation of the right to exclude causes cognizable injury in and of itself, a plaintiff proving that violation is presumptively entitled to at least nominal damages. The jury should be further instructed that beyond the presumed damages, the plaintiff may recover any additional, actual damages proved.
 

 The distinction between presumed damages in cases of trespass and the need to prove damages in cases of nuisance may well be reconciled with the Supreme Court’s statement in footnote 23 of
 
 Adkins
 
 that recovery in “trespass, like nuisance” should be limited “to a proper case.” We hold that recovery in trespass is appropriate for any
 
 appreciable
 
 intrusion onto land in violation of the plaintiff’s right to exclude, while recovery in nuisance is appropriate for only
 
 substantial
 
 and
 
 unreasonable
 
 interference with the plaintiff’s right to quiet enjoyment.
 

 IV. CONCLUSION
 

 There is no need to reformulate the traditional law of trespass to accommodate the problems of airborne pollution, noise, or vibrations, because the doctrines of nuisance and related causes of action have always stood ready to provide remedies. Trespass in Michi
 
 *73
 
 gan remains a distinct doctrine providing a remedy for violation of a distinct property right. A possessor of land proving a direct or immediate intrusion of a physical, tangible object onto the land is presumptively entitled to recover at least nominal damages even absent any proof of actual injury and may recover additional damages for any injuries actually proved.
 

 Because Michigan does not recognize a cause of action in trespass for airborne particulate, noise, or vibrations, we hereby vacate the jury verdict in this matter and remand this case to the trial court for further proceedings consistent with this opinion.
 

 Reversed and remanded. We do not retain jurisdiction.
 

 [1]
 

 This Court has noted before that “claims of trespass and nuisance are difficult to distinguish and include overlapping concepts.”
 
 Traver Lakes Community Maintenance Ass’n v Douglas Co,
 
 224 Mich App 335, 344; 568 NW2d 847 (1997).
 

 [2]
 

 With each expansion, surface material, also called “overburden,” consisting of soil, subsoil, and rock was blasted loose then stockpiled at the edge of the mine property. As the mine was dug deeper, waste rock was likewise blasted loose and stockpiled. The resulting mass of overburden and waste rock is unsightly and so large that residents of Palmer have nicknamed it “Mt. Palmer” and say that it causes their town to have early sunsets.
 

 [3]
 

 See
 
 Phinney v Perlmutter,
 
 222 Mich App 513, 557; 564 NW2d 532 (1997).
 

 [4]
 

 See
 
 Providence Hosp v Nat’l Labor Union Health & Welfare Fund,,
 
 162 Mich App 191, 194-195; 412 NW2d 690 (1987).
 

 [5]
 

 Before oral argument, this Court ordered, and the parties provided, supplemental briefs addressing the issue, “should/does Michigan recognize a cause of action in trespass for airborne particulate matter and/or blastings.”
 

 [6]
 

 Some attribute the origins of this metaphor to a work by Benjamin N. Cardozo, dating from shortly before he ascended to the United States Supreme Court. See Cardozo, The Paradoxes of Legal Science, p 129 (“The bundle of power and privileges to which we give the name of ownership is not constant through the ages. The faggots must be put together and rebound from time to time.”).
 

 [7]
 

 A. M. Honoré likewise distinguished between the rights of exclusion and of use and enjoyment, listing the incidents of ownership as follows:
 

 (1) the right to
 
 exclusive possession;
 

 (2) the right to personal
 
 use and enjoyment;
 

 (3) the right to manage use by others;
 

 (4) the right to the income from use by others;
 

 (5) the right to the capital value, including alienation, consumption, waste, or destruction;
 

 (6) the right to security (that is, immunity from expropriation);
 

 (7) the power of transmissibility by gift, devise, or descent;
 

 (8) the lack of any term on these rights;
 

 (9) the duty to refrain from using the object in ways that harm others;
 

 (10) the liability to execution for repayment of debts; and
 

 (11) residual rights on the reversion of lapsed ownership rights held by others. [Heller,
 
 The Tragedy of the Anticommons: Property in the Transition from Marx to Markets,
 
 111 Harv L R 621, 663, n 187 (1998), citing Honoré, Ownership, in
 
 Oxford Essays in Juris
 
 
 *59
 

 prudence
 
 (A.G. Guest ed, 1961), pp 107, 112-128 (emphasis added).]
 

 [8]
 

 See generally Keeton,
 
 Trespass, Nuisance, and Strict Viability,
 
 59 Columbia L R 457, 459 (1959).
 

 [9]
 

 To put it another way, “Trespass was liability-producing regardless of the degree of harm the invasion caused, while nuisance required substantial harm as a liability threshold.” Halper,
 
 Untangling the Nuisance Knot,
 
 26 B C Envt’l Aff L R 89, 121-122 (1998), citing 4 Restatement Torts, 1st, ch 40, p 225.
 

 [10]
 

 See Halper,
 
 supra
 
 at 122 (“the Restatement (First) expected plaintiffs to bear uncompensated harms that might, for them, be quite severe, if the utility of the- defendant’s conduct to society at large was great enough”).
 

 [11]
 

 We are of the opinion that this kind of analysis is generally only required in a nuisance case and that it is better to preserve that aspect of traditional trespass analysis requiring no proof of actual injury because the invasion of the plaintiffs right to exclude was regarded as tortious by itself.
 

 [12]
 

 This holds even if the noise or vibrations are so intense as to shatter all glass and fell all masonry or otherwise so persistent as to drive all persons from the premises. Although such hazards would indeed infringe on a landowner’s possessory interest, it is the interest in use and enjoyment of the premises, not in exclusion from them, and therefore the cause of action lies not in trespass, but in nuisance or the related doctrines of negligence or strict liability.
 

 [13]
 

 See also Reynolds,
 
 supra
 
 at 228 (“the old element of trespass that prescribed a
 
 direct
 
 invasion of the plaintiffs interests still has significance” [emphasis in original]).
 

 [14]
 

 Because we conclude that no trespass existed in the present case because the intrusions at issue were not tangible things, we need not decide whether defendants caused those intrusions to enter plaintiffs’ land by direct or immediate means for purposes of trespass law.
 

 [15]
 

 We note that the Restatement itself presents its rule as a departure from the traditional requirement of a direct or immediate invasion. 1 Restatement Torts, 2d, § 158, comment i, pp 278-279 (“it is not necessary that the foreign matter should be thrown directly and immediately upon the other’s land”). We would, however, adopt the Restatement’s formulation as a liberalization, not a rejection, of the strictest sense of the traditional requirement for a direct or immediate invasion. Accordingly, rather than reject this traditional requirement, we preserve this requirement as something akin to proximate cause, meaning “that which, in a natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury and without which the accident could not have happened, if the injury be one which might be reasonably anticipated or foreseen.” Black’s Law Dictionary (6th ed), p 1225.