# STATE OF MICHIGAN

# COURT OF APPEALS

---

GABRIELA N. NOLEN, Individually and as Next
Friend to NICHOLAS C. NOLEN, a minor,

      Plaintiff-Appellant,

v

CHARLES C. LAURA, Individually and as
Personal Representative of the ESTATE OF
CHARLES L. LAURA and DARRIN LEE
LAURA as Personal Representative of the
ESTATE OF CHARLES L. LAURA and MARY
GRABOWSKI,

      Defendants-Appellees,

and

CITY OF FLAT ROCK and BERNIE CUIPAK,

      Defendants.

UNPUBLISHED
June 22, 2017

No. 330621
Wayne Circuit Court
LC No. 14-000850-CZ

---

Before: STEPHENS, P.J., and K. F. KELLY and MURRAY, JJ.

PER CURIAM.

      Plaintiff, Gabriela Nolen,[1] individually and as next friend of her son, Nicholas Nolen, appeals as of right the trial court's orders granting defendants' motions for summary disposition and awarding defendants attorney fees and costs. We affirm.

## I. BACKGROUND

---

[1] The singular term "plaintiff" is used in this opinion to refer to Gabriela Nolen in both her individual capacity and as next friend of her son, Nicholas. When necessary for clarity, plaintiff and her son will be referred to as "Gabriela" and "Nicholas," as appropriate. Defendants Charles L. Laura, Sr. ("Charles Sr.") and Charles C. Laura, Jr. ("Charles Jr.") will be referred to collectively as "the Lauras."

-1-

This action arises out of a dispute between three neighbors.

In January 2014, plaintiff, individually and as next friend for her son, Nicholas Nolen, filed this action against defendants Charles Sr., Charles Jr., Mary Grabowski, the city of Flat Rock and Bernie Ciupak, a city director.[2] Plaintiff's claims against Charles Sr. and Grabowski included nuisance theories arising out of the conditions of Charles Sr.'s garden (Count I). Plaintiff also claimed defamation against Charles Sr., arising from a report made to Children's Protective Services regarding the care of the minor. That claim was dismissed by plaintiff. Other claims were made against both Charles Sr. and Jr. alleging nuisance, assault and battery, and intentional infliction of emotional distress related to the idling of a military truck (Counts II, III, and IV.)[3] Plaintiff alleged that the mold odor from the garden was offensive and injurious to her and her son's health and that the odor interfered with her use of her property. Plaintiff also alleged that the idling of the military truck caused strong vibrations that shook her home, and that the vehicle's diesel fumes were foul and noxious and caused her headaches, dizziness, nausea, as well as irritation of the eyes, nose, and throat.

On October 24, 2014, Charles Sr. filed a motion for summary disposition pursuant to MCR 2.116(C)(10) as to each count of the complaint. Defendants Grabowski and Charles Jr. concurred in Charles Sr.'s motion. Charles Sr. also filed a motion for security for costs pursuant to MCR 2.109. He argued that a security bond in an amount sufficient to cover all costs and reasonable expenses that may be awarded by the trial court was warranted considering the tenuous nature of plaintiff's claims. Plaintiff filed responses in opposition to all motions.

Prior to argument on the motions for summary disposition, the trial court signed a December 5, 2014 order that directed plaintiff to post a $5,000 cash bond on or before December 15, 2014. It further provided that "[f]ailure to post the bond in full will result in dismissal of Plaintiffs case." It is undisputed that plaintiff did not post the $5,000 cash bond by December 15, 2014, or anytime thereafter.

While the motions for summary disposition were awaiting oral argument, on January 8, 2015, Charles Sr. filed a motion to dismiss plaintiff's complaint for failing to post the required bond. In addition, Charles Sr. requested that he be awarded costs and attorney fees that were incurred in defense of plaintiff's frivolous lawsuit. In response to this motion, plaintiff argued that Charles Sr.'s motion to dismiss was unnecessary because the December 5 order was self-effectuating. Plaintiff reasoned that since no bond was posted prior to December 15, 2014, the case was automatically dismissed as of that date. Plaintiff filed multiple responses to the motion to dismiss and the still pending motion for summary disposition. In those responses, she denied that defendant was a prevailing party entitled to costs under MCL 600.2591 and that her claims were frivolous. She also, argued that the court lacked jurisdiction to decide the pending summary disposition motions and at the same time requested summary disposition in her favor.

---

[2] The claims against the city and defendant Ciupak were dismissed early in the case.

[3] After Grabowski's deposition, plaintiff abandoned the intentional infliction of emotional distress claim against Grabowski.

At a hearing on April 1, 2015, the court considered the motions for summary disposition and the motion to dismiss. The court ruled that the garden did not constitute a private nuisance or a nuisance per se because there is likely to be some odor as a result of the growing of trees, flowers, veggies, and fruit, and further held that plaintiff's claims were frivolous. The trial court also summarily dismissed plaintiff's private nuisance claim arising out of the idling of the truck because the action did not rise to the level of a nuisance and plaintiff had failed to provide any proof that she or her son were harmed by the idling truck. The court further found that the idling of the truck did not constitute extreme and outrageous conduct, and therefore, plaintiff's claims for intentional infliction of emotional distress must also fail. Finally, the court dismissed the assault and battery claim, reasoning that the idling truck did not involve the intentional touching of another. The court took plaintiff's claim that the parking of the military truck on defendant's property constituted a nuisance per se under advisement. The court also took under advisement defendants' request to tax costs. The court requested that all defendants itemize their costs. With respect to any objection to defendants' itemized costs and attorney fees, the court directed plaintiff to "please file it in writing."

The following day, April 2, 2015, plaintiff filed an objection to defendants' request for costs and attorney fees. She did not challenge with any specificity the hourly rates charged by defendants' attorneys, or the itemization of their fees and costs that was previously filed with the court. She further requested that attorney fees and costs be awarded to her, noting that she had been successful in seeking the dismissal of defendant's counter-complaint.

On June 11, 2015, the trial court issued a written opinion wherein it acknowledged, but rejected, plaintiff's argument that the court could not consider a motion for summary disposition of plaintiff's claim related to the military truck because the case had been dismissed by virtue of the December 5, 2014 order. The court found that plaintiff's position was a "thinly-veiled attempt to avoid attorney fees and costs for filing a frivolous action." The court noted that plaintiff "did not bring the lawsuit or this particular claim to redress a legal wrong," but instead brought this claim "to seek retribution for the filing of a child protective complaint against Plaintiff." Accordingly, the court granted summary disposition on this one remaining claim, and further found that defendants were entitled to sanctions pursuant to MCR 2.114.

On the same day the trial court entered the foregoing order, plaintiff filed a motion entitled: Motion to Dismiss Pursuant to the December 5, 2014 Order of Dismissal for Failure to Post Bond. Two weeks later, plaintiff filed a motion for reconsideration of the trial court's June 11, 2015 opinion and order. The trial court denied plaintiff's motion for reconsideration. At a hearing on July 15, 2015, the trial court rejected plaintiff's argument that the case was dismissed automatically by the December 5, 2014 order. It also denied plaintiff's request for an evidentiary hearing on the issue of costs and attorney fees. Plaintiff's counsel indicated that he had reviewed the itemized billing in detail and wished to examine the attorneys on the reasonableness of their charges. The court ordered plaintiff's counsel to prepare a written response identifying the entries in the three attorney's itemizations that he was challenging. Later, the court reiterated, "regarding time spent on particular tasks will be provided to defense counsel and hopefully there will be correspondence." At a hearing on September 1, 2015, the trial court noted that it had yet to receive any objections from plaintiff to defendants' bill of costs. In response, plaintiff's counsel indicated that he believed he was only required to communicate with defendants' counsel, which he had done. The trial court thereafter granted defendants' motions for costs,

stating that plaintiff's attorney was given an opportunity to challenge the number of hours spent by defense counsel once defense counsels submitted their respective briefs asking for attorney fees in this matter, reasonable attorney fees, and that plaintiff's attorney's response was just to put question marks by some of the listed professional services rendered by defense counsel without any specific indication -- without any indication of what the specific objection or objections were to those items.

Accordingly, on November 23, 2015, the trial court issued an order pursuant to MCR 2.114 and MCL 600.2951, which granted defendants' request for sanctions and awarded the three defendants collectively $86,798.52 in attorney fees and costs. The order specifically included findings that (1) all of plaintiff's claims were frivolous and filed for an improper purpose, and (2) that defendants, after being granted summary disposition, prevailed on the merits. The court further held that the sanctions would be assessed against both plaintiff and her attorney, Byron Nolen, but no sanctions would be assessed against the minor child.[4] Plaintiff now appeals.

## II. THE DECEMBER 5, 2014 ORDER

For her first claim of error, plaintiff argues that the trial court lacked the authority to consider defendants' 2015 motions for summary disposition and motions for attorney fees and costs because her complaint was effectively dismissed on December 15, 2014, in accordance with the trial court's December 5, 2014 order. This issue involves the interpretation of a trial court's order, which we review de novo as a question of law. *Silberstein v Pro-Golf of America, Inc*, 278 Mich App 446, 460; 750 NW2d 615 (2008).

The December 5, 2014, stipulated order provided, in pertinent part:

> 1. Plaintiffs shall post a cash bond of five thousand ($5,000.00) dollars with the Wayne County Circuit Court Clerk.
>
> 2. The bond is cash only and must be in the form of a certified check.
>
> 3. The bond must be posted in full by December 15, 2014.
>
> 4. Failure to post the bond in full will result in dismissal of Plaintiffs' case.

---

[4] After the September 1, 2015 hearing, defendant Charles Sr. submitted a proposed order under MCR 2.602, the seven-day rule. Although plaintiff filed an objection to the proposed order, she neglected to serve a notice of hearing and an alternative proposed order on defendants as required by MCR 2.602(B)(3)(c). After a hearing to resolve the order, the order was ultimately entered on November 23, 2015. Defendants were awarded an additional $2,349.24 in attorney fees and costs necessitated by plaintiff's failure to comply with MCR 2.602(B)(3)(c).

Plaintiff appears to argue that the language of the order was self-executing, that is, if a bond was not posted, plaintiff's case would automatically be dismissed. Plaintiff's argument is not supported by the plain language of the order.

While the plain language of the order evidences the trial court's intent to dismiss the matter should plaintiff fail to post the cash bond, it does not indicate that dismissal would be automatic, without further action by the court or a party. To the contrary, in addition to the aforementioned provisions, the order also provided, "This is <u>not</u> a final order and does <u>not</u> resolve the last pending matter and does <u>not</u> close the case." This additional language contemplated that further action by the parties or the court would be required before the case would be formally dismissed.

In an effort to avoid this conclusion, plaintiff cites several cases and court rules, but none stand for the proposition that the order at issue would be deemed a self-executing order of dismissal. For example, plaintiff cites several cases for the proposition that it is proper for a court to dismiss a case for failure to comply with an order requiring security for costs. See, e.g., *Francis Hall v Harmony Hills Recreation, Inc*, 186 Mich App 265; 463 NW2d 254 (1990). Plaintiff also cites *Heikkinen v Hovinen*, 7 Mich App 541; 152 NW2d 163 (1967), for the proposition that when a court lacks jurisdiction, dismissal is required and the court cannot make further decisions in favor of either party. She also relies on MCR 2.119(A)(1) for the proposition that motions can only be filed in pending actions. While these legal principles are valid, they do not apply to the circumstances of this case.

In sum, the trial court did not err by rejecting plaintiff's argument that the case should have been deemed dismissed, effective December 15, 2014, by virtue of plaintiff's failure to file a security bond in accordance with the December 5, 2014 order.

## III. SUMMARY DISPOSITION

Next, plaintiff challenges the court's order summarily dismissing all of her claims against all three defendants pursuant to MCR 2.116(C)(10). Plaintiff's complaint alleged several theories of liability against the three defendants, including private nuisance, nuisance per se, intentional infliction of emotional distress, and assault and battery. The trial court granted defendants summary disposition of these claims under MCR 2.116(C)(10), because it concluded that plaintiff could not factually support her theories of liability. Indeed, the court concluded that all of plaintiff's claims were frivolous and brought for an improper purpose. We similarly conclude that plaintiff has failed to establish a genuine issue of material fact with respect to the nuisance and intentional infliction of emotional distress claims. However, we conclude that a question of fact exists with respect to the assault and battery claim and, therefore, reverse the trial court's dismissal of that claim.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transp*, 456 Mich 331, 337; 572 NW2d 201 (1998). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). When considering a motion under MCR 2.116(C)(10), a court must view the evidence submitted in the light most favorable to the nonmoving party. *Id*. A

genuine issue of material fact exists when the evidence submitted "might permit inferences contrary to the facts asserted by the movant." *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 360-361; 320 NW2d 836 (1982).

## A. PRIVATE NUISANCE

Plaintiff alleges that the idling truck and garden both constituted private nuisances. We disagree. By definition, a private nuisance refers to "a nontrespassory invasion of another's interest in the private use and enjoyment of land." *Adkins v Thomas Solvent Co*, 440 Mich 293, 302; 487 NW2d 715 (1992). This doctrine evolved to resolve disputes between neighbors. *Id.* An actor is liable for a private nuisance if:

> (a) the other has property rights and privileges in respect to the use or enjoyment interfered with, (b) the invasion results in significant harm (c) the actor's conduct is the legal cause of the invasion, and (d) the invasion is either (i) intentional and unreasonable, or (ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct. [*Id.* at 304, citing 4 Restatement Torts, 2d, § § 821D-F, 822, pp 100-115.]

However, not every interference with the use and enjoyment of land is viable. In *DeLongpre v Carroll*, 331 Mich 474, 476; 50 NW2d 132 (1951), our Supreme Court stated:

> No one is entitled, in every location and circumstance, to absolute quiet, or to air utterly uncontaminated by any odor whatsoever, in the use and enjoyment of his property; but when noises are unreasonable in degree, considering the neighborhood in which they occur and all the attending circumstances, or when stenches contaminate the atmosphere to such an extent as to substantially impair the comfort or enjoyment of adjacent premises, then an actionable nuisance may be said to exist.

"To prevail in nuisance, a possessor of land must prove *significant harm* resulting from the defendant's *unreasonable interference* with the use or enjoyment of the property." *Adams v Cleveland-Cliffs Iron Co,* 237 Mich App 51, 67; 602 NW2d 215 (1999). Damages may only be awarded as a result of a private nuisance "only to the extent that the defendant's conduct was 'unreasonable' according to a public policy assessment of its overall value." *Id.*

In this case, the trial court properly found that plaintiff failed to show either significant harm or unreasonable interference. In her complaint, plaintiff alleged that as a result of the malodorous garden, she and her son experienced mental anguish, fear and shock, denial of social pleasure and enjoyments, embarrassment, and increased expenses related to the increased use of their central air in the summer of 2013. In her response to defendants' motions for summary disposition, plaintiff recited various facts, but the only actual evidentiary support that she offered was her own deposition testimony to the effect that she and her son could not use their backyard in the way they normally would between June and September 2013. Plaintiff admitted that she did not receive any medical treatment as a result of the garden nuisance. The trial court recognized that most gardening activities will cause a related odor and that grass and manure were typical fertilizing and composting agents. Plaintiff also admitted that the odor of the

compost was exacerbated by the heavy rains in the summer of 2013. Clearly, this was a factor over which defendants had no control. Finally, it should be noted that the alleged noxious composting piles existed for approximately three months and were removed in September 2013. While, in general, temporary nuisances can be recoverable, "nuisance normally require[s] some degree of permanence." *Adkins,* 440 Mich at 308. Plaintiff did not show that defendants gardening activities were unreasonable or that they caused significant harm, or that a question of fact existed in this regard.

Similarly, plaintiff did not come forth with evidence to show that a question of fact existed with respect to whether the idling of the military truck constituted a private nuisance. The military truck was registered as an historic vehicle and Charles Sr. drove this vehicle in parades and children's events. Plaintiffs alleged in her complaint that on 14 occasions between August 26, 2013, and December 29, 2013, Charles Sr. and Charles Jr. idled the military truck anywhere from 15 minutes to, on one occasion, 65 minutes. Defendants acknowledged that during the winter months they would start the truck once a week to keep the oil and other engine parts and fluids from freezing. Plaintiff further alleged that the idling truck created a strong vibration that shook plaintiff's house and caused diesel fumes to enter her home. According to plaintiff, this created a hazard to her health and property. However, plaintiff did not offer any evidence in support of this proposition. While she testified that the fumes caused lightheadedness, nausea, itchy eyes, and a scratchy throat, these conditions lasted for only a few hours. They were not permanent and dissipated with time. Plaintiff admitted that she did not have any documentation from a treating medical expert verifying that any of the conditions she suffered were related to defendants' conduct. Moreover, plaintiff also testified that diesel trucks traveled up and down her road in front of her house all the time, and that these diesel trucks emitted an odor that she was exposed to every day. Based on the foregoing, with respect to her private nuisance claim related to the idling truck, plaintiff failed to establish that a genuine issue of material fact existed with respect to significant harm or unreasonable interference.

B.  NUISANCE PER SE

Plaintiff also alleges that defendants' failure to comply with local zoning ordinances—by storing a 2½-ton truck in a residential area and installing a garden on a vacant lot—constituted nuisances per se. At the outset, it should be recognized that "[w]hether an allegedly injurious condition constitutes a nuisance per se is a question of law." *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 269; 761 NW2d 761 (2008). In support of her claim, plaintiff's pleadings rely on MCL 125.3407 for the general proposition that violation of a zoning ordinance is a nuisance per se. This statute is part of the Michigan Zoning Enabling Act, MCL 125.2891 *et seq.*, and provides

> Except as otherwise provided by law, a use of land or a dwelling, building, or structure, including a tent or recreational vehicle, used, erected, altered, razed, or converted *in violation of a zoning ordinance or regulation adopted under this act is a nuisance per se.* The court shall order the nuisance abated, and the owner or agent in charge of the dwelling, building, structure, tent, recreational vehicle, or land is liable for maintaining a nuisance per se. The legislative body shall in the zoning ordinance enacted under this act designate the proper official or

officials who shall administer and enforce the zoning ordinance and do 1 of the following for each violation of the zoning ordinance:

(a) Impose a penalty for the violation.

(b) Designate the violation as a municipal civil infraction and impose a civil fine for the violation.

(c) Designate the violation as a blight violation and impose a civil fine or other sanction authorized by law. This subdivision applies only to a city that establishes an administrative hearings bureau pursuant to section 4q of the home rule city act, 1909 PA 279, MCL 117.4q. [Emphasis added.]

Plaintiff's reliance on MCL 125.3407 is misplaced. The statute only allows for the abatement of a nuisance; it does not allow for an award of damages on the basis of a nuisance per se. See *Travis v Preston*, 249 Mich App 338, 352; 643 NW2d 235 (2002) (applying MCL 125.294, the substantially similar predecessor to MCL 125.3407, and stating that "abatement of the nuisance is the only remedy the statue makes available to the court"). In this case, the conditions that plaintiff asserts constituted nuisances per se have already been abated. Plaintiff admits that the malodorous grass piles have already been removed and with respect to the truck, the city issued a notice of violation on December 23, 2013 requiring Charles Sr. to remove the military truck. This order was upheld by the Wayne Circuit Court.

In any event, a nuisance per se is " 'an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings.' " *Capitol Props Group, LLC v 1247 Ctr Street, LLC*, 283 Mich App 422, 427; 770 NW2d 105 (2009) (quoting *Ypsilanti Twp*, 281 Mich App at 269 n 4). It is clear that composting around a garden and a 2½-ton military truck, even when idling, are alleged nuisances only because of their proximity to other residents. These activities would not necessarily be a nuisance at all times under any circumstances. Consequently, the trial court properly granted summary disposition with respect to plaintiff's claims of nuisance per se.

### C. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff also asserts that the trial court erred when it summarily dismissed her claim that defendants' idling of the truck constituted the intentional infliction of emotional distress. The trial court concluded that defendants' conduct was not so outrageous so as to constitute a tort of this nature. We agree.

To establish a claim of intentional infliction of emotional distress, a plaintiff must prove: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004). The offending conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id*. (citations and footnotes omitted). The trial court decides whether the conduct is so extreme and outrageous so as to permit the claim to advance. *Id*. However, where reasonable minds might differ, the trier of fact should determine if the conduct was sufficiently extreme and outrageous. *Id*.

In this case, the trial court properly concluded that defendants' alleged actions did not meet the requisite threshold. Idling a loud vehicle on 14 occasions during a four-month period cannot be deemed extreme and outrageous. Therefore, the trial court properly granted summary disposition in defendants' favor pursuant to MCR 2.116(C)(10).

## D. ASSAULT AND BATTERY

We conclude that the trial court did not err when it granted summary disposition of plaintiff's assault and battery claim. In *Espinoza v Thomas*, 189 Mich App 110, 119; 472 NW2d 16 (1991), this Court defined an assault as "any intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." "A battery is the willful and harmful or offensive touching of another person which results from an act intended to cause such a contact." *Id*. Plaintiff alleges that as a result of defendants' intentional conduct, she and her son ingested the diesel fumes and then experienced, among other things, headaches, dizziness, and nausea. The trial court summarily dismissed the assault and battery claims because it rejected the notion that these facts involved a "touching." However, the court did not consider the concept of "particulate touching."

## IV. ATTORNEY FEES AND COSTS

Finally, plaintiff challenges the trial court's order granting defendants' motions for attorney fees and costs. A trial court's ruling on a motion for costs and attorney fees is reviewed for an abuse of discretion. *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Id*. This Court reviews for clear error a trial court's finding with regard to whether a claim or defense is frivolous. *Kitchen v Kitchen*, 465 Mich 654, 661; 641 NW2d 245 (2002). Further, this Court reviews for clear error a trial court's determination whether to impose sanctions under MCR 2.114. *Guerro v Smith*, 280 Mich App 647, 677; 761 NW2d 723 (2008). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Kitchen*, 465 Mich at 661-662.

The trial court awarded defendants attorney fees and costs pursuant to MCR 2.114 and MCL 600.2591. MCR 2.114(C)(1) requires that every document of a party represented by an attorney must be signed by at least one attorney of record. That signature certifies that:

> (1) he or she has read the document;
>
> (2) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law; and
>
> (3) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. [MCR 2.114(D)].

If the document is signed in violation of this rule, the court "shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of that document, including reasonable attorney fees." MCR 2.114(E).

In addition to the sanctions provided by MCR 2.114(E), MCR 2.114(F) provides that "a party pleading a frivolous claim or defense is subject to costs as provided in MCR 2.625(A)(2). MCR 2.625(A)(2) provides that "if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591." Under MCL 600.2591(1), "if a court finds that a civil action or defense to a civil action was frivolous, the court that conducts the civil action shall award to the prevailing party the costs and fees incurred by that party in connection with the civil action by assessing the costs and fees against the nonprevailing party and their attorney."

In this case, the trial court did not clearly err when it found that plaintiff's claims were frivolous. As discussed earlier, these claims were devoid of legal merit. Furthermore, the trial court did not clearly err when it found that plaintiff pursued these claims with the intent to harass, embarrass, and injure defendants. Plaintiff candidly testified during her deposition that she filed the complaint in retaliation for the filing of the CPS complaint, which she believed was lodged by defendant Charles Sr. Accordingly, defendants were entitled to sanctions, including reasonable attorney fees, pursuant to MCR 2.114(E).

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray

-10-