BOYLAN v FIFTY EIGHT LIMITED LIABILITY COMPANY

Docket No. 291141. Submitted August 6, 2010, at Detroit. Decided
September 7, 2010, at 9:10 a.m.

Cheryl Boylan brought an action against her landlord, Fifty Eight
Limited Liability Company, in the 52-1 District Court, alleging
negligence, breach of contract, and several other claims arising out
of the failure of her home's septic system. Fifty Eight filed a
third-party complaint against Pamar Enterprises, Inc., and
Giffels-Webster Engineering, Inc., asserting claims for negligence,
trespass, and "violation of Michigan's law of surface waters" and
alleging that the septic system failed because Pamar had improp-
erly graded the property when it installed a water main, eliminat-
ing a swale that diverted surface water and causing surface water
to overflow and flood where it had not done before installation of
the water main. Pamar had installed the water main under a
contract it had with Lyon Township and had entered Fifty Eight's
property in order to perform the contract. Pamar moved for
summary disposition, asserting that under *Fultz v Union-
Commerce Assoc*, 470 Mich 460 (2004), it owed no duty to Fifty
Eight as a matter of law. Pamar also argued that it had not
trespassed because it was authorized to enter the land and that
Michigan's law of surface waters did not apply to the case. The
court, Dennis N. Powers, J., granted Pamar's motion for summary
disposition on all counts and denied Fifty Eight's request to amend
its third-party complaint to add a third-party-beneficiary claim.
Fifty Eight appealed in the Oakland Circuit Court, but the circuit
court, Daniel P. O'Brien, J., affirmed the district court's decisions,
agreeing with it that under *Fultz*, Pamar owed no duty to Fifty
Eight. Fifty Eight appealed by leave granted.

The Court of Appeals *held*:

1. The lower courts erred by concluding that Pamar owed no
duty to Fifty Eight. Tort liability may attach in the presence of a
duty that arises separately and distinctly from a contractual
agreement. Under *Fultz*, the creation of a "new hazard" during the
performance of a contract may give rise to a breach of duty
separate and distinct from the contract. Although Fifty Eight
would have had no cause of action had the flooding been caused

only by negligent performance of the contract, Pamar bore a duty separate and distinct from that under its contract to exercise due care when it entered onto and altered private property. This entry onto Fifty Eight's land triggered a duty to avoid interfering with the physical condition of the land and a duty to avoid increasing the burden of the easement it held over the portion of Fifty Eight's property during the course of the water-main construction. In addition, Pamar's water-main construction interfered with the property's drainage, eliminating the swale and creating a new hazard that posed a danger to third persons. Viewed in the light most favorable to Fifty Eight, the record supported that Pamar breached duties owed to Fifty Eight by interfering with the drainage of the property, causing an excess of water to overflow the property, and creating a new condition that it should have foreseen could predispose the property to flooding.

2. The lower courts erred by granting Pamar summary disposition on Fifty Eight's claim for common-law trespass. When a person is authorized to use property, a common-law trespass may occur if the user's activities exceed the scope of the landowner's permission. The record showed that the property never flooded until Pamar changed the grade of the land. Fifty Eight's allegations that Pamar knew or should have known that its activities would result in a physical intrusion of water onto Fifty Eight's land and that Pamar's actions on the land exceeded the scope of its authorized use presented questions of fact.

3. Michigan's law of surface waters applies to adjoining landowners and has not been extended to impose liability on a party who neither owns nor controls a dominant estate. The circuit court properly affirmed summary disposition of this claim.

4. Not every person incidentally benefited by a contractual promise may sue for breach of the promise. The status of third-party beneficiary requires that the promisor undertook to give or do or refrain from doing something directly to or for the person. At best, Fifty Eight qualified only as an incidental beneficiary of portions of Pamar's contract with Lyon Township. Because it would have been futile to amend the third-party complaint to add a third-party-beneficiary claim, the circuit court properly affirmed the denial of Fifty Eight's motion to amend the complaint.

Affirmed in part, reversed in part, and remanded.

1. NEGLIGENCE — DUTIES TO THIRD PARTIES — NECESSITY OF AN INDEPENDENT DUTY.

Tort liability may attach in the presence of a duty that arises separately and distinctly from a contractual agreement; the cre-

ation of a new hazard during the performance of a contract may give rise to a breach of duty separate and distinct from the contract; a party entering onto private property to perform a contract may bear duties separate and distinct from those under the contract, such as a duty to exercise due care to avoid interfering with the physical condition of the land and to avoid increasing the burden of any easement it may hold over the property.

2. TRESPASS — EASEMENTS — USE OF PROPERTY IN EXCESS OF EASEMENT.

A person authorized to use property may commit a common-law trespass if the user's activities exceed the scope of the landowner's permission.

*Pierce, Duke, Farrell & Tafelski, PLC* (by *Mark C. Pierce*), for Fifty Eight Limited Liability Company.

*Berry, Johnston, Sztykiel & Hunt, P.C.* (by *James F. Hunt* and *W. James Fitzgibbons*), for Pamar Enterprises, Inc.

Before: GLEICHER, P.J., and ZAHRA and K. F. KELLY, JJ.

PER CURIAM. In early 2007, flooding and sewage backup damaged a residence owned by Fifty Eight Limited Liability Company (Fifty Eight). An investigation revealed that surface water pooling in the home's front yard had incapacitated the septic system. Fifty Eight concluded that during the construction of a water main for Lyon Township, Pamar Enterprises, Inc., had eliminated a swale protecting the home from surface-water runoff. We must now decide whether Pamar owed Fifty Eight any duty separate and distinct from those under Pamar's contract with Lyon Township. We find that Pamar did owe Fifty Eight a duty separate and distinct from those under the Pamar-Lyon Township contract, and on that basis we reverse the circuit court's order granting Pamar summary disposition of Fifty Eight's negligence claim. We also reverse the circuit court's order granting Pamar summary disposition of

Fifty Eight's common-law trespass count, but we affirm the circuit court's orders granting Pamar summary disposition of Fifty Eight's statutory trespass and surface-water-law claims and denying Fifty Eight's motion to file an amended third-party complaint.

### I. UNDERLYING FACTS AND PROCEEDINGS

Fifty Eight owned a home located on Ten Mile Road in Lyon Township, which it rented to plaintiff Cheryl Boylan. Between January 2007 and March 2007, various portions of the home flooded and sewage backed up into the bathroom and kitchen sinks. Boylan reported the flooding to Fifty Eight, which undertook an investigation into the cause. Fifty Eight's property manager, William Clark, concluded that during Pamar's participation in the installation of a new water main for Lyon Township, Pamar had improperly graded the earth on Fifty Eight's property. An affidavit of Clark attests, in pertinent part:

> 3. . . . I have reviewed the video taken prior to construction of the property . . . and it is my opinion that the flooding experienced by the property involved in this lawsuit was directly caused by improper final grading by Defendant Pamar.

> 4. During the approximate [sic] ten years that we have owned the property, we never experienced any flooding in the front yard until January, 2007. As a result of the grading of our property by Pamar at the conclusion of the installation of the water main, Pamar negligently graded the property so that the surface water run-off from 10 Mile Road flowed to the house instead of to the catch basin that was on the east side of the property. Prior to the installation of the water main by Pamar, there was a swale that ran parallel to Ten Mile Road that directed the surface water run-off to a catch basin. Pamar eliminated the swale, and as a result, water ponded on the front yard of the house.

5. The septic system is located underneath the front yard of the house. The ponding of water on top of the septic system caused the septic system to become saturated to the point of failure. As a result, raw sewage backed up into the house . . . .

In May 2007, Boylan filed suit against Fifty Eight in the 52-1 District Court, alleging negligence, breach of contract, and several other claims. In October 2007, Fifty Eight filed a third-party complaint against Pamar and Giffels-Webster Engineering, Inc., asserting claims for negligence, trespass, and "violation of Michigan's law of surface waters."[1] According to Fifty Eight's third-party complaint, Pamar violated its duty to

properly design the grade of the earth, and to grade the earth so as to not cause a larger volume or velocity of water to enter or flow to the Property after the completion of the Project when compared to the volume or velocity of water that entered or flowed to the Property before the Project was started.

Pamar moved for summary disposition under MCR 2.116(C)(8) and (10), contending that pursuant to *Fultz v Union-Commerce Assoc*, 470 Mich 460; 683 NW2d 587 (2004), it owed no duty to Fifty Eight as a matter of law. Pamar further argued that because it had entered Fifty Eight's land with authorization, Fifty Eight could not prove trespass, and that Michigan's law of surface waters lacked applicability under the circumstances of this case.

The district court granted Pamar's motion for summary disposition and denied Fifty Eight's request to file an amended complaint that would have added a third-party beneficiary contract claim. Fifty Eight appealed in the Oakland Circuit Court, which affirmed the district

---

[1] Fifty Eight apparently settled with Boylan and Giffels-Webster, neither of whom is a party to this appeal.

court's decisions. Both the district and circuit courts opined that pursuant to the Supreme Court's decision in *Fultz*, Pamar owed Fifty Eight no duty in tort. The circuit court concluded that Pamar's grading of the worksite on Fifty Eight's land did not give rise to "a separate and distinct duty" or a "new hazard," but instead constituted "a foreseeable consequence of the terms of the contract that caused this undisputed screw up by Pamar and it's because it trickles from the very terms of the contract that the court finds it doesn't qualify as a new hazard . . . ." We granted Fifty Eight leave to appeal.

## II. SUMMARY DISPOSITION STANDARD OF REVIEW

Fifty Eight contests the circuit court's summary disposition ruling, which we review de novo.[2] *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh*, 263 Mich App at 621. "A genuine issue of material fact exists when the record, giving the benefit

---

[2] In the district and circuit courts, the parties attached and referred to documentary evidence and deposition testimony beyond the pleadings. The circuit court's ruling expressly referred to the contract between Pamar and Lyon Township, which the pleadings do not include. Accordingly, we treat Pamar's motion, and the circuit court's ruling, as governed by the standards set forth in MCR 2.116(C)(10).

of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*, 469 Mich at 183.

### III. NEGLIGENCE

Fifty Eight first contends that the circuit court's determination that Pamar owed no duty to Fifty Eight rests on a misinterpretation of *Fultz*. Fifty Eight maintains that *Fultz* does not stand for the proposition that the mere existence of a contract between Pamar and Lyon Township completely "immunizes" Pamar from any potential tort liability relating to its construction of the water main. Pamar responds that *Fultz* plainly dictates that it owed no duty to "a third party to its contract" with Lyon Township. Because the parties argue at length concerning the interpretation and application of *Fultz*, we now turn to a careful examination of that decision.

The plaintiff in *Fultz* slipped and fell in an icy parking lot owned by Comm-Co Equities. *Fultz*, 470 Mich at 461. Comm-Co had contracted with Creative Maintenance Limited (CML) for snow removal services. *Id*. at 462. The plaintiff sued both Comm-Co and CML, claiming that CML's negligent failure to plow or salt the parking lot had caused her fall. *Id*. The plaintiff theorized that CML owed her "a common-law duty . . . to exercise reasonable care in performing its contractual duties" and that CML breached this duty by failing to perform its contractual duty of plowing or salting the parking lot. *Id*. at 463-464. The Supreme Court observed that the plaintiff had "allege[d] no duty owed to her independent of the contract," but instead relied on "common-law tort principles expressed in Restatement Torts, 2d, § 324A . . . ." *Id*. at 464, 468.

The Supreme Court held that as a matter of law, CML "owed no contractual or common-law duty to plaintiff to plow or salt the parking lot." *Id.* at 463. In reaching this conclusion, the Supreme Court rejected that a common-law duty to the plaintiff arose solely from CML's breach of its contract with Comm-Co. The Court instructed lower courts to instead analyze tort claims brought by third parties to a contract "by using a 'separate and distinct' mode of analysis. Specifically, the threshold question is whether the defendant owed a duty to the plaintiff that is separate and distinct from the defendant's contractual obligations. If no independent duty exists, no tort action based on a contract will lie." *Id.* at 467.

The "separate and distinct duty" analysis described in *Fultz* refutes Pamar's sweeping assertion that a contractor owes no duties to any third party. Rather, *Fultz* specifically contemplated that despite the existence of a contract, under certain circumstances tort duties to third parties may lie:

> If defendant negligently performs a contractual duty or breaches a duty arising by implication from the relation of the parties created by the contract, the action may be either in contract or in tort. In such cases, however, no tort liability arises for failing to fulfill a promise in the absence of a duty to act that is separate and distinct from the promise made. [*Id.* at 469-470.]

Stated differently, tort liability may attach in the presence of a duty that arises separately and distinctly from the contractual agreement.

In *Fultz*, the Supreme Court posited that the creation of a "*new* hazard" may give rise to a breach of a duty separate and distinct from the contract. *Id.* at 469 (emphasis in original). *Fultz*'s "new hazard" reference derived from this Court's decision in *Osman v Summer*

*Green Lawn Care, Inc*, 209 Mich App 703; 532 NW2d
186 (1995), overruled in part on other grounds by *Smith
v Globe Life Ins Co*, 460 Mich 446; 597 NW2d 28 (1999).[3]
The plaintiff in *Osman* also slipped and fell on an icy
surface subject to a snow removal contract. *Osman*, 209
Mich App at 704. This Court summarized the plaintiff's
allegations that the defendant

> breached its duty by negligently, carelessly, and recklessly
> removing snow from the premises and placing it on a
> portion of the premises when it knew, or should have been
> known or anticipated, that the snow would melt and freeze
> into ice on the abutting sidewalk, steps, and walkway, thus
> posing a dangerous and hazardous condition to individuals
> who traverse those areas. Plaintiff alleged that defendant
> was negligent in failing to keep the premises and all
> common areas fit for their foreseeable uses and in failing to
> remove ice from areas after notice of the dangerous condi-
> tion, in allowing ice to build up, in maintaining a hazardous
> condition when it could have been reasonably discovered,
> and in failing to remove a dangerous condition. [*Id.*]

The defendant argued that its contract with the land-
owner "indicated that defendant assumed no duty or
responsibilities of the premises owner," nor "any of the
responsibility for damage or injury caused by slipping
and falling on any pavement surface." *Id.* at 705.

This Court found that the contract at issue "al-
low[ed] only one interpretation," and specifically re-
ferred to the following contractual language: " 'Nothing
contained in this agreement shall relieve Provider from
liability for its breach of this agreement or damages

---

[3] In *Smith*, the Supreme Court held that in *Osman*, this Court had
"erroneously applied" incorrect standards for summary disposition de-
rived from *Rizzo v Kretschmer*, 389 Mich 363; 207 NW2d 316 (1973).
*Smith*, 460 Mich at 455 n 2. The Supreme Court clarified that *Osman* and
several other cited decisions "that approve of *Rizzo*-based standards for
reviewing motions for summary disposition brought under MCR
2.116(C)(10) are overruled to the extent that they do so." *Id.* at 456 n 2.

caused to person or property as a result of Provider's, its employees', its agents' or representatives' negligence.' " *Id.* at 706-707 (emphasis omitted). The Court in *Osman* explained that when "[r]ead as a whole," the contractual language obligated the defendant "to provide snow removal services in a reasonable manner, holding defendant liable for its negligent conduct in the snow removal process." *Id.* at 707. The Court elaborated that the defendant's tort duty to the plaintiff stemmed from two sources:

> Not only did the contract articulate that defendant would remain liable for its negligent conduct, but such duty also arose out of defendant's undertaking to perform the task of snow plowing. The duty allegedly owing is that which accompanies every contract, a common-law duty to perform with ordinary care the things agreed to be done. Those foreseeably injured by the negligent performance of a contractual undertaking are owed a duty of care. [*Id.* at 707-708 (citation omitted).]

The common-law duty of care existed "separate and apart from the contract itself" as part of "a general duty owed by defendant to the public of which plaintiff is a part." *Id.* at 710.

In *Fultz*, the Supreme Court declined to overrule this portion of *Osman*. The Supreme Court reasoned that in *Osman*, the defendant had created a new hazard by placing snow near pedestrian walkways, in an area where melting and freezing snow foreseeably created a danger " 'to individuals who traverse those areas.' " *Fultz*, 470 Mich at 469, quoting *Osman*, 209 Mich App at 704. The *Fultz* Court emphasized that unlike the defendant in *Osman*, "CML's failure to carry out its snow-removal duties owed to [Comm-Co] created no new hazard to plaintiff." *Fultz*, 470 Mich at 469.

The subject of Pamar's contract with Lyon Township was the installation of a new water main. By virtue of the contract, Pamar assumed a duty to construct the water main according to certain detailed specifications. Presumably, Pamar fulfilled its contractual obligations by successfully installing the water main. Notwithstanding that the new water main would potentially benefit neighboring property owners, *Fultz* teaches that no duty to perform the water-main contract existed with respect to Pamar and third parties. Alternatively phrased, Fifty Eight would have no cause of action had the flooding occurred simply because Pamar neglected to install the water main. However, separate and distinct from Pamar's contract to install a new water main for Lyon Township, Pamar bore a duty to exercise reasonable care when it entered onto and altered private property. Pamar's contract with Lyon Township for "[i]nstallation of approximately 6,600 linear feet of [16-inch] water main along Ten Mile Road, intersecting Milford Road, in Lyon Township, Michigan," neither created this separate duty of care nor eliminated it.

In contrast with the facts described in *Fultz*, Fifty Eight's tort claim against Pamar did not arise solely from Pamar's performance under the contract with Lyon Township. Irrespective of the existence of a contract, Pamar's entry onto Fifty Eight's land triggered several separate and distinct common-law duties to avoid permanently damaging the property. The common law indisputably recognizes a landowner's right to the full enjoyment of his or her land. For example, the private nuisance doctrine penalizes

> an interference with the occupation or use of land or an interference with servitudes relating to land. There are countless ways to interfere with the use and enjoyment of land including interference with the physical condition of the land itself, disturbance in the comfort or conveniences

of the occupant including his peace of mind, and threat of future injury that is a present menace and interference with enjoyment. The essence of private nuisance is the protection of a property owner's or occupier's reasonable comfort in occupation of the land in question. [*Adkins v Thomas Solvent Co*, 440 Mich 293, 303; 487 NW2d 715 (1992).]

Furthermore, the parties agree that Pamar held an easement over a portion of Fifty Eight's property in the course of the water-main construction. "An easement does not displace the general possession of the land by its owner, but merely grants the holder of the easement qualified possession only to the extent necessary for enjoyment of the rights conferred by the easement." *Schadewald v Brulé*, 225 Mich App 26, 35; 570 NW2d 788 (1997). "A principle which underlies the use of all easements is that the owner of an easement cannot materially increase the burden of it upon the servient estate or impose thereon a new and additional burden." *Delaney v Pond*, 350 Mich 685, 687; 86 NW2d 816 (1957). Viewed in the light most favorable to Fifty Eight, Pamar's elimination of the swale materially increased the easement's burden by predisposing the land to flooding.

The existence of these separate and distinct duties of care readily distinguish this case from *Banaszak v Northwest Airlines, Inc*, 477 Mich 895 (2006). In that case, the Supreme Court held that a contract required a defendant "to provide a cover over the 'wellway,' an opening at the end of the moving walkway that contains the mechanical elements. The purpose of the cover was to protect persons using that area." *Id.* Because the hazard created by the defendant's failure to properly install the cover "was the subject of the . . . contract," the Supreme Court held that the defendant "owed no duty to plaintiff that was 'separate and distinct' from its

duties under the contract." *Id.* Fifty Eight asserts that Pamar entered onto Fifty Eight's land, disrupted the drainage contours, failed to recognize this error, and neglected to correct it. And no evidence of record suggests that maintenance of surface drainage contours served as "the subject of the contract" between Pamar and Lyon Township.

Additionally, Pamar's water-main-construction work created a new hazard consisting of interference with the property's drainage system. Record evidence established that in the course of constructing the water main, Pamar entered onto Fifty Eight's property, graded the land, and eliminated a swale that had been present before the water-main work commenced. *Fultz* explained that a party to a contract breaches a duty separate and distinct from the contract when it creates a new hazard that it should have anticipated would pose a dangerous condition to third persons. *Fultz*, 470 Mich at 468-469. Viewed in the light most favorable to Fifty Eight, the facts reasonably support that Pamar's rearrangement of the soil on Fifty Eight's premises and Pamar's elimination of a preexisting swale created a new condition on the premises that it should have foreseen could predispose the property to flooding.

Notably, the Pamar-Lyon Township contract itself envisions that the parties intended Pamar to shoulder responsibility for remedying damage to residential property. The contract directed Pamar to:

> 6.20 ... take all necessary precautions for the safety of, and shall provide the necessary protection to prevent damage, injury or loss to:
>
> * * *
>
> 6.20.3 other property at the site or adjacent thereto, including trees, shrubs, lawns, walks, pavements, road-

ways, structures, utilities and Underground Facilities not
designated for removal, relocation or replacement in the
course of construction.

. . . All damage, injury or loss to any property referred to
in paragraph 6.20.2 or 6.20.3 caused, directly or indirectly,
in whole or in part, by CONTRACTOR . . . shall be rem-
edied by CONTRACTOR . . . .

Like the contract in *Osman*, this language reinforces
the contract's contemplation that Pamar would conduct
its operations in a reasonable manner and that the
contract does not shield Pamar from liability. See *Os-
man*, 209 Mich App at 707, 709-710. Viewed in the light
most favorable to Fifty Eight, Pamar violated a recog-
nized tort duty, independent of its contract with Lyon
Township, when it interfered with the drainage on Fifty
Eight's property. Consequently, we conclude that the
circuit court erred by affirming the district court's
order granting Pamar summary disposition of Fifty
Eight's negligence claim.

In reaching our conclusions, we specifically reject
Pamar's assertion that the Supreme Court overruled
*Osman* through its peremptory order in *Mierzejewski v
Torre & Bruglio, Inc*, 477 Mich 1087 (2007). In that
brief order, the Supreme Court specifically invoked
*Fultz* in support of its holding that "[t]he defendant did
not owe any duty to the plaintiffs separate and distinct
from the contractual promise made under its snow
removal contract with the premises owner." *Id*. As in
*Banaszak*, the Supreme Court's statement in *Mierze-
jewski* signals that any purported "new hazard" created
by the snow removal contractor in fact fell within the
scope of the contract's performance requirements and
therefore did not arise from the breach of a separate
and distinct duty of care. In contrast, Pamar has failed
to identify any portion of its contract with Lyon Town-

ship that obligated it to alter or influence the drainage characteristics of Fifty Eight's land.

### IV. TRESPASS

Fifty Eight next challenges the circuit court's affirmance of summary disposition regarding Fifty Eight's trespass claim. Fifty Eight asserts that Pamar committed a "direct trespass" by changing the grade of the land in the absence of any authority, thereby "caus[ing] water to enter [Fifty Eight's] property." Pamar replies that because it had authorization to enter onto Fifty Eight's land, Fifty Eight cannot establish a trespass.

"Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 67; 602 NW2d 215 (1999). "[A] 'direct or immediate' invasion for purposes of trespass is one that is accomplished by any means that the offender knew or reasonably should have known would result in the physical invasion of the plaintiff's land." *Id.* at 71. Damages may be recovered for "any *appreciable* intrusion." *Id.* at 72. Surface-water diversion may effect an intrusion onto land. See *Kernen v Homestead Dev Co*, 232 Mich App 503, 512; 591 NW2d 369 (1998).

Notwithstanding Pamar's authority to enter onto Fifty Eight's land, a common-law trespass may occur if the user's activities exceeded the scope of the landowner's permission. In *Embrey v Weissman*, 74 Mich App 138, 140; 253 NW2d 687 (1977), the plaintiff, a landowner, granted Oakland County an easement for construction of a sewer line. The county hired the defendant, Weissman Contracting Corporation, to install the sewer line. *Id.* The plaintiff alleged that Weissman's

activities "seriously disturbed the land" and sued under theories including trespass, negligence, and breach of contract. *Id.* Although this Court reversed a jury verdict awarding treble damages for a statutory trespass under MCL 600.2919(1), *id.* at 141-142, we recognized that a properly instructed jury nevertheless could have found that Weissman committed a common-law trespass:

> The use of the land was controlled by the contract between plaintiff and the county, and it is certainly possible that the corporation's activities, beyond the scope of the use created, injured the interest plaintiff retained as owner of the construction area. An easement is an interest that can be limited not only in area, but also in use. *Cf. Carlton v Warner*, 46 Mich App 60; 207 NW2d 465 (1973). The court's instruction, however, should have made clear that, within the construction area, only those activities that went beyond the reasonable exercise of the use granted could constitute trespass. See 3 Tiffany, Real Property, § 802, p 322. [*Id.* at 142-143.]

See also *Schadewald*, 225 Mich App at 40 (observing that activities exceeding the "reasonable exercise of the use granted by the easement may constitute a trespass").

Clark's affidavit attested that the front yard of Fifty Eight's property never flooded before Pamar changed the grade of the land. Although Pamar entered the land with authority, Fifty Eight's allegations that (1) Pamar knew or reasonably should have known that its activities would result in a physical intrusion of water onto Fifty Eight's land and (2) Pamar's actions on the land exceeded the scope of its authorized use present questions of fact appropriate for jury determination. Therefore, we conclude that the circuit court erred by affirming the district court's order granting Pamar summary disposition of Fifty Eight's common-law trespass claim.

Fifty Eight's complaint also sets forth a trespass claim under MCL 600.2919(1), which provides in relevant part:

Any person who:

(a) cuts down or carries off any wood, underwood, trees, or timber or despoils or injures any trees on another's lands, or

(b) digs up or carries away stone, ore, gravel, clay, sand, turf, or mould or any root, fruit, or plant from another's lands, or

(c) cuts down or carries away any grass, hay, or any kind of grain from another's lands

without the permission of the owner of the lands, or on the lands or commons of any city, township, village, or other public corporation without license to do so, is liable to the owner of the land or the public corporation for 3 times the amount of actual damages. If upon the trial of an action under this provision or any other action for trespass on lands it appears that the trespass was casual and involuntary, or that the defendant had probable cause to believe that the land on which the trespass was committed was his own, or that the wood, trees, or timber taken were taken for the purpose of making or repairing any public road or bridge judgment shall be given for the amount of single damages only.

Imposition of treble damages for statutory trespass requires a showing "that the trespass was intentional and with knowledge that it was without right." *Kelly v Fine*, 354 Mich 384, 387; 92 NW2d 511 (1958) (construing 1948 CL 692.451, a predecessor statute with substantially similar language). If the trespass "was casual and involuntary," treble damages are inappropriate. MCL 600.2919(1)(c); see also *Embrey*, 74 Mich App at 141.

"[A] trespasser's good faith and honest belief that he possessed the legal authority to commit the

complained-of act are sufficient to avoid treble damage liability." *Governale v City of Owosso*, 59 Mich App 756, 759; 229 NW2d 918 (1975). "Treble damages under MCL 600.2919 . . . may not . . . be awarded where the trespass was merely negligent." *Iacobelli Constr Co, Inc v Western Cas & Surety Co*, 130 Mich App 255, 262; 343 NW2d 517 (1983). Under the statute, a plaintiff need not show that a defendant acted with malice or an intent to injure the land, but must substantiate that the trespass occurred as the result of more than mere negligence. *Id.* at 262-263. No evidence of record in this case tends to suggest that Pamar intentionally changed the drainage contours on Fifty Eight's property or that Pamar intended that its actions would have an impact on Fifty Eight's property drainage. We conclude that the circuit court correctly affirmed the district court's order granting Pamar summary disposition of Fifty Eight's statutory trespass claim.

## V. SURFACE-WATER DIVERSION

Fifty Eight asserts that the circuit court incorrectly affirmed summary disposition of its claim invoking Michigan's surface-water laws. Fifty Eight believes that a question of fact exists concerning whether Pamar altered the surface-water runoff in a fashion that diverted water onto Fifty Eight's property. Pamar contends that surface-water-law principles do not apply, given that it does not own any adjacent or neighboring property.

> The owner of the lower or servient estate must accept surface water from the upper or dominant estate in its natural flow. By the same token, the owner of the dominant estate may not, by changing conditions on his land, put a greater burden on the servient estate by increasing and

> concentrating the volume and velocity of the surface water. [*Lewallen v City of Niles*, 86 Mich App 332, 334; 272 NW2d 350 (1978).]

Michigan's law of surface waters applies to adjoining landowners, but has never been extended to impose liability on a party who neither owns nor controls a dominant estate. Because no caselaw supports Fifty Eight's assertion that the law of surface waters affords a cause of action under the facts presented, we conclude that the circuit court correctly affirmed summary disposition of this claim.

### VI. AMENDMENT OF FIFTY EIGHT'S THIRD-PARTY COMPLAINT

Lastly, Fifty Eight challenges the circuit court's decision to deny its motion to amend the third-party complaint to add a third-party-beneficiary claim. We review for an abuse of discretion a circuit court's decision to grant or deny leave to amend a pleading; we will only reverse the court's ruling if it occasions an injustice. *Casey v Auto-Owners Ins Co*, 273 Mich App 388, 400-401; 729 NW2d 277 (2006). A court does not abuse its discretion if it selects an outcome falling within the range of reasonable and principled outcomes. *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

Fifty Eight sought to amend its third-party complaint in conformity with MCR 2.116(I)(5), which states, "If the grounds asserted are based on subrule (C)(8), (9), or (10), the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." Except in limited circumstances, a "party may amend a pleading only by leave of the court or by written consent of the adverse party. Leave shall be freely given when

justice so requires." MCR 2.118(A)(2). A court should freely grant the nonprevailing party leave to amend the pleadings unless the amendment would be futile or otherwise unjustified. *Ormsby v Capital Welding, Inc*, 471 Mich 45, 52-53; 684 NW2d 320 (2004). Motions to amend a complaint should be denied only for particularized reasons, such as undue delay, bad faith, or dilatory motive on the part of the movant, a repeated failure to cure deficiencies in the pleadings, undue prejudice to the opposing party by virtue of allowing the amendment, or the futility of amendment. *Casey*, 273 Mich App at 401.

In MCL 600.1405, the Legislature has defined, in relevant part as follows, who may claim third-party-beneficiary status with respect to an agreement entered into by other parties:

> Any person for whose benefit a promise is made by way of contract, as hereinafter defined, has the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee.
>
> (1) A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something directly to or for said person.

The Michigan Supreme Court has summarized that

> the plain language of this statute reflects that not every person incidentally benefitted by a contractual promise has a right to sue for breach of that promise, but rather only if the promisor has "undertaken to give or to do or refrain from doing something *directly* to or for said person." [*Brunsell v City of Zeeland*, 467 Mich 293, 296; 651 NW2d 388 (2002).]

"By using the modifier 'directly,' the Legislature intended 'to assure that contracting parties are clearly aware that the scope of their contractual undertakings

encompasses a third party, directly referred to in the contract, before the third party is able to enforce the contract.' " *Schmalfeldt v North Pointe Ins Co*, 469 Mich 422, 428; 670 NW2d 651 (2003), quoting *Koenig v South Haven*, 460 Mich 667, 677; 597 NW2d 99 (1999). When determining whether MCL 600.1405 applies to a purported third-party beneficiary, "a court should look no further than the form and meaning of the contract itself" and should view the contract objectively. *Schmalfeldt*, 469 Mich at 428 (quotation marks omitted).

In *Kisiel v Holz*, 272 Mich App 168; 725 NW2d 67 (2006), this Court considered facts somewhat analogous to those presented here. The plaintiff in *Kisiel* contracted with the Holz Building Company, Inc, for the construction of a home. *Id.* at 169. Holz's owner subcontracted with GFA Development, Inc., for excavation and concrete work. *Id.* When numerous cracks appeared in the basement walls and floor, the plaintiff sued Holz and several other defendants, contending that he was an intended third-party beneficiary under the agreement between Holz and GFA. *Id.* at 169-170. This Court rejected the argument that the plaintiff could maintain a contract action "merely because he or she would receive a benefit from its performance or would be injured by its breach." *Id.* at 170-171.

> In general, although work performed by a subcontractor on a given parcel of property ultimately benefits the property owner, the property owner is not an intended third-party beneficiary of the contract between the general contractor and the subcontractor. 9 Corbin, Contracts (interim ed), § 779D, p 41; see also 2 Restatement Contracts, 2d, § 302, comment e, illustration 19, p 444 (property owner is only an incidental beneficiary of construction subcontract between general contractor and subcontractor). Absent clear contractual language to the contrary, a

property owner does not attain intended third-party-beneficiary status merely because the parties to the subcontract knew, or even intended, that the construction would ultimately benefit the property owner. [*Id.* at 171.]

After reviewing the language employed in the contract between Pamar and Lyon Township in light of these governing legal principles, we discern no support for Fifty Eight's contention that it qualifies as a third-party beneficiary of this agreement. The contract nowhere refers to Fifty Eight. At best, Fifty Eight qualifies as an incidental beneficiary of the portion of the contract requiring Pamar to "provide the necessary protection to prevent damage, injury or loss to . . . other property at the site . . . ." Because amendment of Fifty Eight's complaint to add a third-party-beneficiary claim would have proved futile, we conclude that the circuit court correctly affirmed the district court's denial of Fifty Eight's motion to amend its third-party complaint.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.