# STATE OF MICHIGAN

# COURT OF APPEALS

PRAXAIR, INC.,

        Plaintiff/Counter-Defendant,

and

U.S. STEEL CORPORATION,

        Intervening Plaintiff/Counter-
        Defendant-Appellee,

v

DETROIT BULK STORAGE, INC.,

        Defendant/Cross-Defendant,

and

MORTON SALT, INC.,

        Defendant/Counter-Plaintiff-
        Appellant,

and

HDI-GERLING AMERICA INSURANCE
COMPANY

        Counter-Plaintiff/Cross-Plaintiff.

UNPUBLISHED
March 1, 2016

No. 323354
Wayne Circuit Court
LC No. 12-012916-NZ

Before: GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

PER CURIAM.

This appeal arises from a circuit court order denying Morton Salt, Inc.'s motion for summary disposition on U.S. Steel Corporation's negligence claim pursuant to MCR 2.116(C)(8) and (10). This Court granted Morton Salt's application for leave to appeal.[1] For the reasons stated in this opinion, we reverse and remand.

This action began in October 2012, when Praxair, Inc. filed a complaint against Detroit Bulk Storage, Inc. and Morton Salt. Praxair's complaint alleged that on January 28, 2011, the Detroit Bulk Storage facility and Morton Salt accumulated "an immense stockpile of road salt" near Praxair's underground pipelines, that Detroit Bulk Storage and Morton Salt neglected to safely and securely store the road salt, and that the weight of the salt pile, which was over 100,000 tons, "caused a soil shift that severed the . . . cooling water supply lines and the electric" lines Praxair used at its facility. The complaint alleged negligence and trespass counts against Detroit Bulk Storage and Morton Salt.

In early 2013, U.S. Steel, the owner of the affected real property, intervened and filed claims for breach of contract and negligence against its tenant, Detroit Bulk Storage. In January 2014, U.S. Steel filed a negligence claim against Morton Salt. U.S. Steel asserted that Morton Salt owed it "a duty to conduct its operations in a manner that would not disturb or damage U.S. Steel's real property and . . . business operations." According to U.S. Steel, Morton Salt breached this duty as follows: (1) a Morton Salt employee regularly visited the Detroit Bulk Storage facility "to oversee the manner and location in which" Detroit Bulk Storage "offloaded, stockpiled, stored, and otherwise handled" the salt; (2) Morton Salt and Detroit Bulk Storage had contracts instructing and directing it "how and where to offload the salt," and "the manner and location in which to stockpile, store, and otherwise handle the salt;" (3) on January 27, 2011, Morton Salt delivered "large quantities of salt," which Detroit Bulk Storage and Morton Salt "offloaded, stockpiled and stored" "in an unsafe and otherwise improper manner and location;" and (4) on January 28, 2011, the improper and unsafe "loading, storage, and stockpiling" of salt caused "a global stability failure" at the Detroit Bulk Storage facility. U.S. Steel averred that Morton Salt's breach proximately caused more than $65,000,000 in business interruption losses and damages to the real property.[2]

In March 2014, Morton Salt sought summary disposition of U.S. Steel's negligence claim. Morton Salt asserted that U.S. Steel had identified no statutory or contractual duty of care owed by Morton Salt. Morton Salt also contended that as a matter of law, it owed U.S. Steel no common-law duty because they shared no relationship, and Morton Salt could not have foreseen that any of its alleged negligence would give rise to a reasonable risk of damages or harm to U.S. Steel. Morton Salt added that it could face no liability for acts performed by its independent contractor, Detroit Bulk Storage.

---

[1] *Praxair Inc v Detroit Bulk Storage Inc*, unpublished order of the Court of Appeals, entered November 25, 2014 (Docket No. 323354).

[2] All other claims in this litigation have settled.

In response, U.S. Steel argued that, as a matter of law, Morton Salt owed it a duty to exercise due care in delivering large quantities of salt in a manner that would not damage the dock owned by U.S. Steel. U.S. Steel argued that Morton Salt regularly delivered salt to the U.S. Steel dock in River Rouge; "controlled the amount of salt discharged onto the property;" instructed Detroit Bulk Storage how to handle, receive, and store its salt; and inspected the salt stored by Detroit Bulk Storage. U.S. Steel further submitted that, as a matter of law, it was foreseeable to Morton Salt that delivering and storing "over 100,000 tons of salt on U.S. Steel's property would damage" the property. Alternatively, U.S. Steel argued that material questions of fact existed concerning whether Morton Salt owed U.S. Steel a duty of care "to not damage U.S. Steel's property." The circuit court denied the motion on the basis that a Morton Salt stockpile inspector had some "knowledge regarding the circumstances of the loading and storing" of salt by Detroit Bulk Storage.

"We review de novo a circuit court's summary disposition ruling." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).[3] A motion brought under MCR 2.116(C)(10) tests whether a claim has adequate factual support. *Id*. "[T]his Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Id*.

A party alleging negligence must prove that "(1) the defendant owed the plaintiff a legal duty, (2) the defendant breached the legal duty, (3) the plaintiff suffered damages, and (4) the defendant's breach was a proximate cause of the plaintiff's damages." *Hill v Sears, Roebuck & Co*, 492 Mich 651, 660; 822 NW2d 190 (2012) (internal quotation and citation omitted). On appeal, the parties dispute whether Morton Salt owed U.S. Steel a duty of care. "Whether a defendant owes a plaintiff a duty of care is a question of law decided by the circuit court," which this Court reviews de novo. *Id*. at 659.

A duty may arise from a contractual relationship,[4] by virtue of a statute, or "under the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Loweke v Ann Arbor Ceiling & Partition Co, LLC*, 489 Mich 157, 164-166; 809 NW2d 553 (2011) (internal quotation and citation omitted). U.S. Steel has not alleged that Morton Salt owed it a duty pursuant to contract or statute; it alleges that Morton Salt owed it a duty to act reasonably in its delivery and maintenance of the stored salt. Morton Salt responds that it had no such duty to U.S. Steel, who owned the land on which Detroit Bulk Storage was located. Instead, the only party with such a duty was Detroit Bulk

---

[3] Morton Salt sought summary disposition under MCR 2.116(C)(8) and (10). Because the parties attached evidence beyond the pleadings, and the circuit court referenced this evidence in ruling on the motion, the motion is properly considered pursuant to MCR 2.116(C)(10). See *Walsh*, 263 Mich App at 621.

[4] The parties do not dispute that no contractual relationship existed between Morton Salt and U.S. Steel.

-3-

Storage because it was an independent contractor who was responsible for the relevant decision-making and activities.

> A premises owner who hires an independent contractor is generally not vicariously liable for injuries that the contractor negligently causes. The rationale for this rule is that an independent contractor is not subject to the control of the employer, and therefore the employer should not be held vicariously liable for actions outside its control.
>
> The test for whether a worker is an independent contractor or an employee is whether the worker has control over the method of his or her work: If the employer of a person or business ostensibly labeled an independent contractor retains control over the method of the work, there is in fact no contractee-contractor relationship, and the employer may be vicariously liable under the principles of master and servant. In other words: An independent contractor is one who, carrying on an independent business, contracts to do a piece of work according to his own methods, and without being subject to control of his employer as to the means by which the result is to be accomplished, but only as to the result of the work. [*Campbell v Kovich*, 273 Mich App 227, 233-234; 731 NW2d 112 (2006) (internal citations, quotation marks, and alternations omitted).]

The critical evidence in this case is (1) the language of the salt-storage agreement between Detroit Bulk Storage and Morton Salt, (2) Morton Salt's Stockpile Operator's Manual which it provided to Detroit Bulk Storage and to which Detroit Bulk Storage was to adhere, and (3) the testimony of Morton Salt's stockpile manager. We have reviewed the relevant exhibits and contrary to U.S. Steel's claim, find that none of them create a question of fact as to whether Morton Salt was directing the relevant activities of Detroit Bulk Storage. Rather, they establish that Morton Salt's specific directives went to the preservation of the salt from the elements, barge unloading, and general safety standards. Morton Salt did not control the manner in which Detroit Bulk Storage would prepare the land or assure proper geological support for the salt piles. Morton Salt instead relied on Detroit Bulk Storage to address such issues in its role as an independent storage contractor.

U.S. Steel asserts that Morton Salt delivered excessive amounts of salt to Detroit Bulk Storage and that the salt piles were double the height permitted in U.S. Steel's lease with Detroit Bulk Storage. However, it has not offered any evidence that Morton Salt was privy to that lease, let alone bound by it, nor that Detroit Bulk Storage ever advised Morton Salt that its deliveries exceeded its capacity. Similarly, U.S. Steel has not provided evidentiary support for its argument that the capacity was limited to 100,000 tons. It relies on the Morton Salt—Detroit Bulk Storage contract, but that document does not limit capacity to 100,000 tons. It instead provided that the capacity must be *at least* 100,000 tons. Finally, U.S. Steel has not presented any evidence that the occasional inspection of the salt piles by Morton Salt had any purpose other than to assure that the salt was being properly preserved.

U.S. Steel relies on *Loweke*, 480 Mich 157, and on *Boylan v Fifty Eight Limited Liability Co*, 289 Mich App 709; 808 NW2d 277 (2010). In *Loweke*, the Supreme Court held that a contractor retains common law duties to third-parties in the execution of its tasks. *Loweke*, 480

Mich at 159. In *Boylan*, we held that a contractor owed a duty to a plaintiff property owner that was separate and distinct from its contract with a third-party. *Boylan*, 289 Mich App at 719. We agree with plaintiff that these cases stand for the proposition that a contractor cannot assert that the scope of his contractual duties immunize him from suit brought by a third party harmed by the contractor's negligence. However, those cases do not establish that the party hiring the contractor is responsible for the contractor's breach of its common law duties to third parties unless there is evidence that the contractor's harm-producing actions were taken on direction of the hiring party. Here, the record does not contain any evidence that the negligence of Detroit Bulk Storage resulted from the directions or control of Morton Salt. Moreover, Morton Salt did not have a common law duty to assure that Detroit Bulk Storage complied with the terms of its lease with U.S. Steel.

Lastly, U.S. Steel argues that the denial of summary disposition should be affirmed because discovery remained ongoing when summary disposition was sought. However, in light of the fact that U.S. Steel was unable, and is still unable, to identify in any but the vaguest terms, what duty Morton Salt allegedly violated, we conclude that further discovery would be futile. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 33-34; 772 NW2d 801 (2009).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Kathleen Jansen
/s/ Douglas B. Shapiro