*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEON BISHOP,

        Plaintiff-Appellant,

v

TOBY KEMP, TERRY KEMP, and LINDA KEMP,

        Defendants-Appellees.

UNPUBLISHED
August 24, 2023

No. 360685
Saginaw Circuit Court
LC No. 20-043061-CH

Before: GADOLA, P.J., and M. J. KELLY and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Leon Bishop, appeals as of right the trial court order dismissing with prejudice his complaint for declaratory judgment following a bench trial. Finding no errors, we affirm.

## I. BASIC FACTS

The parties own adjacent properties in Chesaning Township. At trial, they stipulated that Bishop owned the property to the north, that his property had a lower elevation, and that it naturally received surface water from the property owned by defendants, Toby Kemp, Terry Kemp, and Linda Kemp.

When Bishop purchased his property in 2000, he was aware that there was an open ditch on the adjoining property that naturally drained onto his property. Further, at the border of the two properties, there is a ravine located entirely on Bishop's property that goes to the Shiawassee River. On two occasions, Bishop made improvements to the ravine by adding "field stones" to the bottom. He testified that the first time he did so, water from the drainage tiles on the adjoining property caused erosion damage and forced him to redo his improvements.

Sometime in 2003 or 2004, Bishop, concerned about erosion on his property, plugged three drainage tiles—one 10-inch tile and two 8-inch tiles—on the adjoining property that were discharging water onto his property. This led to the adjoining property flooding and its then-owners, David and Dianne Kuchar, suing him for damages. As a result of the lawsuit, Bishop was ordered to pay damages and to unplug the 10-inch tile, which was permitted by a 1951 easement. He was not ordered to uncap the 8-inch tiles. Bishop testified that after the 2005 lawsuit, the

-1-

Kuchars did not leave the two 8-inch tiles capped; instead, they installed a crock, tied the 8-inch tiles to the crock, and then installed a 12-inch tile off of the crock so that the water would drain onto Bishop's property. He submitted a photograph purporting to show the 12-inch tile "dumping" water onto his property, but admitted that the outlet was not on his property.

In October 2016, the Kemps acquired the property from the Kuchars. The Kemps intended the property to be an investment, and they leased it to a farmer. Because it was inefficient to farm the property with the open ditch, the Kemps contracted with Pennington Farm Drainage to fill in the ditch and replace it with one drainage tile. Michael Pennington, the contractor, testified that in July 2020, he installed a 12-inch drainage tile and filled in the ditch. The drain ended approximately 175 feet from Bishop's property. Pennington testified, repeatedly, that the replacement of the ditch with the 12-inch drain decreased the volume and the velocity of the water flowing from the Kemps' property to Bishop's property. Bishop, in contrast, testified that he knew, based upon a mathematical formula, that the 12-inch tile installed by Pennington increased the volume and velocity of the water. He added that he "can't really say" whether his property was or was not damaged as a result of the 12-inch tile being installed by Pennington; however, he was concerned that it would increase erosion.

Following the trial and relevant to the issues raised on appeal, the trial court found that, as to the 12-inch tile installed by the Kuchars, Bishop had not presented any evidence indicating that it increased the volume and velocity of the surface water, he had not attributed any specific erosion to that drain, and he had presented "no information as to, historically, what the water flow was prior to the installation of that drain, and what the water flow was after." As a result, the court found that it had "little evidence or basis to reach a conclusion as to that drain." With regard to the 12-inch drain replacing the open ditch, the court credited Pennington's testimony that the tile decreased rather than increased the volume or velocity of the water that used to naturally drain from the ditch onto Bishop's property. Thus, Bishop had not met his burden to show that the Kemps changed the conditions of their land to put a greater burden on his property. Nor was there any evidence of damage to Bishop's property as a result of that drain being installed. Based on its findings, the trial court concluded that "there is simply insufficient evidence" to support Bishop's claims, so it dismissed Bishop's complaint with prejudice. This appeal follows.

## II. DECLARATORY JUDGMENT

### A. STANDARD OF REVIEW

Bishop argues that the trial court erred by denying his complaint for declaratory relief relating to the two 12-inch drainage tiles on the Kemps' property. A trial court's decision to deny a request for declaratory relief is reviewed for an abuse of discretion. *Barrow v Detroit Election Comm*, 305 Mich App 649, 662; 854 NW2d 489 (2014). The court abuses its discretion if its "decision is outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). The trial court's findings of fact following a bench trial are reviewed for clear error. *Chelsea Inv Group LLC v Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id*. Great deference is given to the court's factual findings. *Id*. The court's conclusions of law, however, are reviewed de novo. *Id*.

## B. ANALYSIS

It is well-established "that the natural flow of surface waters from the upper, dominant estate forms a 'natural servitude' that encumbers the lower, servient estate." *Wiggins v City of Burton*, 291 Mich App 532, 563; 805 NW2d 517 (2011) (citation omitted). "The owner of the lower, servient estate must bear this natural servitude, and is bound by law to accept the natural flow of surface waters from the upper, dominant estate." *Id.* "[T]he owner of the upper estate has no right to increase the amount of water that would otherwise naturally flow onto the lower estate." *Id.* Thus, "the owner of the dominant estate may not, by changing conditions on his land, put a greater burden on the servient estate by increasing and concentrating the volume and velocity of the surface water." *Id.* at 564.

Bishop complains that the 12-inch tile installed by Pennington altered the natural flow of the water. The parties stipulated that the water naturally flowed north from the Kemps' property to Bishop's property. Bishop directs this Court to Pennington's testimony that he installed two catch basins to collect water and divert it into the 12-inch tile that replaced the natural ditch. Bishop argues that because at least one of the catch basins is not directly over the 12-inch tile, the basin necessarily diverts water from the west or east instead of from the south to the north. Pennington, however, testified that the catch basins were only used as a replacement for the natural flow of the water. Bishop also points to Pennington's testimony that he tied a preexisting 6-inch clay tile with an outlet on the west side of the ditch into the 12-inch tile. With respect to both the catch basins and the 6-inch tile, Bishop has only pointed to facts that support a finding that the Kemps—or their predecessors in interest—made a change to the conditions of the land. A change to the condition of the dominant estate, however, is only impermissible if the change puts a greater burden on the servient estate by increasing and concentrating the volume and velocity of the surface water. *Wiggins*, 291 Mich App at 563-564.

Here, the trial court found that the 12-inch drain installed by Pennington did not increase the volume and velocity of the surface water. On appeal, Bishop contends that finding was erroneous. In support, he points to his own testimony that the water from the 12-inch tile was being discharged at a much higher rate than the natural discharge from the open ditch. However, the trial court credited Pennington's testimony that the volume and velocity of the water discharged onto Bishop's property was decreased, not increased. Pennington specifically testified that the replacement of the open ditch with the 12-inch tile was a common-erosion control practice. It decreased the volume of the discharge because the 12-inch tile was smaller than the open ditch. Further, by decreasing the grade and "flattening the pipe," he was able to decrease the velocity. The trial court did not clearly err by crediting Pennington's testimony instead of Bishop's testimony, and we defer to its credibility determinations. See *Patel v Patel*, 324 Mich App 631, 633; 922 NW2d 647 (2018).

Bishop next asserts that the 12-inch tile installed by the Kuchars was not permitted by the 1951 easement, amounts to a trespass, and should be removed, plugged, or rendered inoperable. The diversion of surface water onto the property of another can constitute a trespass. *Boylan v Fifty Eight LLC*, 289 Mich App 709, 723; 808 NW2d 277 (2010). However, in order to establish a trespass claim, the intrusion must be unauthorized. *Id.* Here, Bishop argues that the tile "concentrates a large amount of surface water and discharges it directly onto" his property. He states that the discharge is causing significant erosion of his property. However, the record does

not support his contention. At trial, he testified that the 12-inch tile installed by the Kuchars discharges water onto his property. Yet, he did not present any evidence indicating that the tile increased the volume and velocity of the natural flow of water onto his property. As stated above, it is well-established that the owner of a servient estate must bear the natural flow of surface waters from a dominant estate. *Wiggins*, 291 Mich App at 563-564. Thus, in order to prove that the diversion of water was a trespass, Bishop had to first show that the 12-inch tile installed by the Kuchars improperly increased the volume or velocity of the natural flow of water onto his property. He presented no such evidence. Rather, as found by the trial court, there was no evidence regarding the flow of the water before and after the 12-inch tile was installed by the Kuchars and thus left the court with little evidence to reach a conclusion. Consequently, the court found that Bishop had failed to meet his burden of proof as to the 12-inch tile installed by the Kuchars. Given that there is, in fact, no evidence showing that the Kuchar tile increased the volume or velocity of the natural flow of water onto Bishop's property, the trial court did not clearly err by finding the evidence insufficient.[1]

Affirmed. The Kemps may tax costs as the prevailing party. MCR 7.219(A).

/s/ Michael F. Gadola
/s/ Michael J. Kelly
/s/ Brock A. Swartzle

---

[1] On appeal, Bishop suggests that the only artificial drainage permitted is the 10-inch tile permitted by the 1951 easement. However, as made clear by *Wiggins*, the owner of a dominant estate may replace a natural drain with an artificial drain so long as the change does not increase the burden to the servient estate. See *Wiggins*, 291 Mich App at 563-564. Therefore, the fact that the 1951 easement only allows for a single 10-inch tile is not dispositive.